**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INTELLECT WIRELESS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 6763 |
| ) | |
| SHARP CORPORATION, SHARP ) | Judge Rebecca R. Pallmeyer |
| ELECTRONICS CORPORATION, ) | |
| HEWLETT-PACKARD COMPANY, ) | |
| PALM, INC., DELL INC., and ) | |
| GARMIN INTERNATIONAL, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Intellect Wireless Inc. ("IW"), holder of U.S. Patent Numbers 7,266,186 (" '186 Patent") and 7,310,416 (" '416 Patent") sued Defendants Sharp Corporation, Sharp Electronics Corporation, Hewlett-Packard Company, Palm, Inc., Dell Inc., and Garmin International, Inc.[1] for infringement in October 2010. This court granted partial summary judgment of non-infringement to Defendants in March 2012, and then stayed the case pending Judge William Hart's ruling on inequitable conduct in another case brought by IW on these same patents, *Intellect Wireless, Inc. v. HTC Corp.*, No. 09-cv-2945. Following a bench trial, Judge Hart held that both patents were unenforceable due to inequitable conduct, *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056 (N.D. Ill. 2012), and that ruling was affirmed on appeal. *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339 (Fed. Cir. 2013). The court dismissed this case with prejudice.

Defendants now move for a declaration that the case before this court is exceptional and for an award of attorneys' fees under 35 U.S.C. § 285 [154]. An award of fees is appropriate, Defendants argue, because Plaintiff acquired the patent by engaging in inequitable conduct

---

[1] Plaintiff voluntarily dismissed its claims against Garmin in February 2011 after the parties reached a confidential settlement agreement. (Stipulated Order of Dismissal [71].)

before the U.S. Patent and Trademark Office ("PTO"), there was additional misconduct during the course of this litigation, and the infringement suit was meritless. Plaintiff acknowledges that the patents were declared invalid due to inequitable conduct, but argues nonetheless that the case is not exceptional. For the reasons discussed below, the court grants Defendants' motion [154] and refers the parties to Local Rule 54.3 to determine the appropriate fee award.

## BACKGROUND

The '186 and '416 Patents, owned by inventor and IW CEO, Daniel A. Henderson, describe a wireless portable communications device to receive caller identification information and a picture over a telephonic communications network. (Mem. Op. & Order [132], hereinafter "Summ. J. Op.," at 2; Defs.' Mot. to Declare Case Exceptional & Award Att'ys' Fees & Costs [154], hereinafter "Defs.' Mot.," at 1.) Both patents were issued in 2007 (Summ. J. Op. at 2), and since February 2008, IW has filed six suits, including this one,[2] against twenty-four companies[3] in the wireless industry in the Northern District of Illinois, alleging infringement of the '186 and/or '416 Patents. Attorneys from the law firm of Niro, Haller & Niro, Ltd.[4] have represented Plaintiff in all six cases. Most of these suits have been settled pursuant to

---

[2] *Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, No. 08-cv-1215 (Gottschall, J.) (filed Feb. 28, 2008); *Intellect Wireless, Inc. v. Motorola, Inc.*, No. 08-cv-1350 (Holderman, C.J.) (filed Mar. 6, 2008); *Intellect Wireless, Inc. v. Samsung Elecs. Co. Ltd.*, No. 08-cv-5873 (Coar, J.) (filed Oct. 14, 2008); *Intellect Wireless, Inc. v. HTC Corp.*, No. 09-cv-2945 (Hart, J.) (filed May 14, 2009); *Intellect Wireless, Inc. v. Apple Inc.*, No. 10-cv-586 (Grady, J.) (filed Jan. 28, 2010); *Intellect Wireless, Inc. v. Sharp Corp.*, No. 10-cv-6763 (Pallmeyer, J.) (filed Oct. 20, 2010).

[3] Plaintiff has sued the following: T-Mobile USA, Inc., United States Cellular Corporation, Virgin Mobile USA, L.P., Helio, Inc., Motorola, Inc., LG Electronics, Inc., Sanyo Electric Co. Ltd., Kyocera Communications, Inc., Kyocera Wireless Corp., Sprint Spectrum LP, Sprint Nextel Corp., Sanyo North America Corp., Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., HTC Corporation, HTC America, Inc., Research in Motion Limited, AT&T Mobility LLC, Apple, Inc., Sharp Corporation, Sharp Electronics Corporation, Hewlett-Packard Company, Palm, Inc., and Garmin International, Inc.

[4] The Niro firm's name changed during the time of this litigation from Niro, Scavone, Haller & Niro, Ltd. to Niro, Haller & Niro Ltd.

confidential agreements.[5] The first of these agreements is relevant to this motion: On September 5, 2008, Plaintiff entered into a licensing agreement and addendum with Motorola. (License & Settlement Agreement, Ex. 3 to Defs.' Mot., hereinafter "Motorola Agreement"; Royalty Adjustment Agreement, Ex. 4 to Defs.' Mot., hereinafter "Motorola Addendum"); *see also HTC Corp.*, 910 F. Supp. 2d at 1073. The Motorola Agreement provided that, in exchange for dismissal of the claims alleged against Motorola in a case pending before then-Chief Judge Holderman, No. 08-cv-1350, Motorola would pay Plaintiff $5,000,000. (Motorola Agreement at 4–5.) The Motorola Addendum, dated that same day, established a mechanism for Motorola to recover the full license fee: it provided that Motorola was entitled to a refund up to the full amount of the license agreement ($5,000,000) if Plaintiff successfully licensed its patents to other companies. (Motorola Addendum at 2); *see also HTC Corp.*, 910 F. Supp. 2d at 1073 ("The addendum promised refund of the license payment if IW collected license fees from other defendants, including LG, Samsung, Research in Motion and Apple."). Because Plaintiff did successfully license its patents to other named defendants, Motorola ultimately recovered the full amount of its license fee, *HTC Corp.*, 910 F. Supp. 2d at 1073, and enjoyed a cost-free license in the disputed technology.

Defendants contend that Plaintiff was able to use the Motorola Agreement to leverage other settlements. (Defs.' Mot. at 6.) Specifically, Defendants assert, in negotiations with other alleged infringers, Plaintiff relied on the $5,000,000 that Motorola agreed to pay in its settlement agreement with IW as a monetary baseline, without disclosing the Motorola Addendum, which promised Motorola a refund. (*Id.*) After a bench trial on the Defendants' claim of inequitable conduct, in *HTC Corp.*, Judge Hart concluded that "IW has been evasive about its licensing

---

[5] Eighteen defendants, in total, settled. The only defendants who did not settle are HTC Corp./HTC Am. Inc. in the case before Judge Hart, and the remaining Defendants in this case—Sharp Corporation, Sharp Electronics Corporation, Hewlett-Packard Company, and Palm, Inc.

activities." *HTC Corp.*, 910 F. Supp. 2d at 1073. Specifically, Judge Hart found that Plaintiff produced the Motorola Agreement to Defendant HTC on October 18, 2010, but did not produce the Addendum until March 18, 2011, despite the fact that the parties had participated in a settlement conference on December 9, 2010 and had referred to the Motorola Agreement during these negotiations. *Id.* Sixteen of the eighteen defendants who settled (all but T-Mobile and AT&T) did so between September 5, 2008, when Motorola signed the Agreement and Addendum, and March 8, 2011, when Plaintiff finally produced the Motorola Addendum.[6]

A handful of Defendants refused to settle, however, and proceeded to trial. In *Intellect Wireless v. HTC Corp.*, the case assigned to Judge Hart, Defendants prevailed in a bench trial by presenting evidence that Henderson had acquired the '186 and '416 Patents by means of inequitable conduct before the PTO. 910 F. Supp. 2d at 1074. Defendants here, excluding Garmin International, Inc., also declined to settle and won a partial summary judgment in March 2012; this court granted summary judgment on the direct infringement claims, but denied it with respect to Plaintiff's claim of induced infringement. (Summ. J. Op. at 20.) This court stayed any further proceedings on March 23, 2012 pending the outcome of a bench trial before Judge Hart in *HTC Corp.* on the issue of inequitable conduct. (Min. Entry [136].)

---

[6]    Though Judge Hart's opinion did not say so explicitly, it appears that IW did not disclose the Motorola Addendum to the Defendants who settled between September 5, 2008 and March 8, 2011. The following defendants settled during this time: Motorola (Oct. 2, 2008), Min. Entry in *LG Elecs.*, No. 08-cv-1350 [106]; LG Electronics (Apr. 16, 2009), Min. Entry in *LG Elecs.*, No. 08-cv-1350 [145]; Sanyo (July 7, 2009), Min. Entry in *LG Elecs.*, No. 08-cv-1350 [173]; Virgin Mobile and Helio (Aug. 6, 2009), Min. Entry in *T-Mobile USA, Inc.*, No. 08-cv-1215 [112]; Samsung (Nov. 16, 2009), Min. Entry in *Samsung Elecs.*, No. 08-cv-5873 [33]; Apple (Mar. 26, 2010), Notice of Voluntary Dismissal in *Apple Inc.*, No. 10-cv-586 [16]; Sprint (Mar. 30, 2010), *LG Elecs.*, No. 08-cv-1350 [226]; Research in Motion (June 30, 2010), Min. Entry in *HTC Corp.*, No. 09-cv-2945 [72]; Kyocera (Nov. 16, 2010), Min. Entry in *LG Elecs.*, No. 08-cv-1350 [243]; U.S. Cellular (Dec. 22, 2010), Min. Entry in *T-Mobile USA, Inc.*, No. 08-cv-1215 [167]; Garmin (Feb. 14, 2011) (Min. Entry [70].) T Mobile and AT&T appear to have settled after March 8, 2011, when Plaintiff finally produced the refund addendum to the Motorola agreement in *HTC Corp. See* T-Mobile (May 3, 2011), Min. Entry in *T-Mobile USA, Inc.*, No. 08-cv-1215 [178]; AT&T (Aug. 2, 2011), Min. Entry in *HTC Corp.*, No. 09-cv-2945 [158].

In support of his conclusion, Judge Hart cited evidence that Henderson had filed a false Rule 131[7] declaration with the PTO on February 9, 2007 in order to "swear behind" U.S. Patent No. 5,452,356 ("Albert reference"). Patent Examiner Olisa Anwah had cited that patent, which has a priority date of February 10, 1993, in rejecting picture claims in the prosecution of U.S. Patent No. 7,257,210 (" '210 Patent").[8] *HTC Corp.*, 910 F. Supp. 2d at 1058, 1065. In the February 9, 2007 declaration, Henderson stated that he had "conceived of the claimed invention prior to February 10, 1993 and did not abandon, suppress or conceal the invention from at least before February 10, 1993 to either *an actual reduction to practice* in July 1993 or to January 5, 1994, the filing date of this application." *Id.* at 1065 (quoting Henderson R. 131 Decl., Feb. 9, 2007, ¶ 4) (emphasis added). Henderson also asserted in the declaration that "the claimed invention was *actually reduced to practice* and was *demonstrated* at a meeting with KaZUo Hashimoto of Hashimoto Corporation in July of 1993," and the invention was a "working prototype." 910 F. Supp. 2d at 1065 (quoting Henderson R. 131 Decl., Feb. 9, 2007, ¶¶ 9–10) (emphasis added). Judge Hart concluded, contrary to Henderson's assertions, that "the inventions described in '186 and '416 patents had not been reduced to practice." 910 F. Supp.

---

[7] 37 C.F.R. § 1.131 permits applicants or patent owners to provide sworn statements of prior invention. *See HTC Corp.*, 910 F. Supp. 2d at 1058–59 (discussing Rule 131 and quoting the Federal Circuit's discussion of Rule 131 in *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996)). Section (b) provides: "The showing of facts for [such a statement] . . . shall be such, in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from prior to said date to a subsequent reduction to practice or to the filing of the application. Original exhibits of drawings or records, or photocopies thereof, must accompany and form part of the affidavit or declaration or their absence must be satisfactorily explained." 37 C.F.R. § 1.131(b).

[8] During prosecution of the '210 Patent, Henderson added "picture claims" to the '186 Patent, and to the '416 Patent, which were dependent on the '210 Patent. *HTC Corp.*, 910 F. Supp. 2d at 1065. As Judge Hart observed: "All of the patent applications filed by Henderson considered in this case are one family of patents claiming priority to the '862 patent [U.S. Patent No. 6,278,862] which has a priority date of January 5, 1994. All of the applications were treated as one case heard by the same two examiners. Accordingly, all of the Rule 131 declarations that were filed in the proceeding will be considered insofar as they may bear on the disputed issues." *Id.* at 1061.

2d at 1068. Indeed, Henderson testified, in response to a question during trial, that it was "true" that he has "never built any device in the history of [his] work that can transmit a picture." *HTC Corp.*, 910 F. Supp. 2d at 1068. Henderson also "admitted that there was no transmission of any information or image in the July 1993 Hashimoto demonstration." *Id.* at 1070. After making the false statement in the Rule 131 Declaration on February 9, 2007, Judge Hart found, Henderson failed to correct the error, and instead, repeated the statement in eleven subsequently-filed declarations. *Id.* at 1068, 1071–72. In light of this evidence, Judge Hart determined that the declarations were material, because they had been used to obtain patents, and that Henderson intended to deceive the PTO. *Id.* at 1073–74. Judge Hart concluded that Henderson had engaged in inequitable conduct in order to obtain the '186 and '416 patents, rendering them unenforceable. *Id.* at 1074.

In addition to the false statement that Henderson had actually reduced the patented inventions to practice, Judge Hart concluded that Henderson acted to mislead the PTO by submitting a press release from the Smithsonian announcing Henderson's donation of "two prototypes and related documentation for a pioneering wireless picturephone technology developed in 1993." Henderson relied on the press release, in part, to claim diligence in reducing the invention to practice. *HTC Corp.*, 910 F. Supp. 2d at 1067–68, 1073. But what Henderson had actually donated, the court found, were hollow imitations made of wood and plastic. *Id.* at 1067–68, 1072–73 (quoting Smithsonian press release). Judge Hart found that the press release "was deceptive" because "Henderson did not produce a picturephone in 1993." *Id.* The Federal Circuit agreed, concluding that the press release was "misleading" and its submission to the PTO "reinforces the pattern of deceit." *HTC Corp.*, 732 F.3d at 1345.

Each of the six complaints filed in the Northern District of Illinois alleging infringement of the '186 and '416 Patents, including the complaint and amended complaint here, also misleadingly allege that the Smithsonian received "Henderson's *prototype* for a wireless *picturephone* device." (*See* Am. Compl. in *T-Mobile USA, Inc.*, No. 08-cv-1215 [134], Ex. 10 to

6

Defs.' Mot., ¶ 3; Third Am. Compl. in *LG Elecs.*, No. 08-cv-1350 [89], Ex. 11 to Defs.' Mot., ¶ 3; Compl. in *Samsung Elecs.*, No. 08-cv-5873 [1], Ex. 12 to Defs.' Mot., ¶ 3; Am. Compl. in *HTC Corp.*, No. 09-cv-2945 [23], Ex. 9 to Defs.' Mot., ¶ 3; Compl. in *Apple Inc.*, No. 10-cv-586 [1], Ex. 13 to Defs.' Mot., ¶ 3; Am. Compl. [57] ¶ 3) (emphasis added.) Attempting to reinforce that claim in the complaint and amended complaint in this case, Plaintiff included a quotation from an article in *PC Today,* published in June 2009, which states that "Daniel A. Henderson put together a couple of *prototypes*" for a "*camera phone*" in 1993. (Compl. [1] ¶ 3; Am. Compl. ¶ 3) (emphasis added.) Similar statements, contained in the Smithsonian press release submitted to the PTO, were relevant to Judge Hart's finding of inequitable conduct.

The Federal Circuit affirmed that finding. *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1346 (Fed. Cir. 2013). Plaintiff's argument that the false statements were immaterial was, the court held, "entirely without merit" "[g]iven the false statements and the clear failure to do what is necessary according to our precedent to cure the misconduct." 732 F.3d at 1344. Nor did the district court err in finding that Henderson acted with the intent to deceive. *Id.* at 1345. The declarations' content alone evidences such intent, the court noted, adding that "[s]ubmission of an affidavit containing fabricated examples of actual reduction to practice raises a strong inference of intent to deceive," and that "Mr. Henderson engaged in a pattern of deceit, which makes the inference stronger." *Id.* at 1346–46. Around the same time, the PTO rejected both the '186 and '416 patents, after reexamination proceedings, concluding that they were invalid in light of prior art. (Action Closing Prosecution of '186 Patent, Ex. 14 to Defs.' Mot.; Action Closing Prosecution of '416 Patent, Ex. 15 to Defs.' Mot.; *see also* Defs.' Mot. at 6–7.)

After the Federal Circuit affirmed Judge Hart's ruling, the defendants in his case moved for an award of attorneys' fees from Plaintiff under Section 285 of the Patent Act, 35 U.S.C. § 285, and from Plaintiff's attorneys Raymond P. Niro, Paul K. Vickrey, Paul C. Gibbons, David J. Mahalek, and their law firm under 28 U.S.C. § 1927. (*See* Defs.' HTC Corp. & HTC Am., Inc.'s Renewed Mot. to Declare Case Exceptional & Award Att'ys' Fees in *HTC Corp.*, No. 09-cv-2945

[232], hereinafter "HTC Mot.," at 1.) Judge Hart has not yet ruled on the motion, but he observed that "[t]he prior rulings," concluding that the '186 and '416 Patents are unenforceable due to inequitable conduct before the PTO, "establish *prima facie* support for a finding of an exceptional case," (Op. & Order, May 6, 2014, in *HTC Corp.*, No. 09-cv-2945 [291], hereinafter "May 6 Op.," at 2), and the parties are currently in discovery. During the course of that discovery, the defendants in the *HTC Corp.* case recovered an e-mail exchange between Henderson and his patent prosecuting attorney, Robert K. Tendler,[9] on February 9 and 10, 2007, in which Henderson admits that the February 9, 2007 Rule 131 Declaration, filed with the PTO, was "factually inaccurate," "incorrect" and "improper." (*See* E-mail from Robert Tendler to Daniel Henderson (Feb. 10, 2007, 5:01 PM), Ex. 35 to Defs.' HTC Corp. & HTC Am., Inc.'s Reply in Supp. of HTC Mot. in *HTC Corp.*, No. 09-cv-2945 [249].) In response to Tendler's e-mail message informing Henderson that Tendler had submitted a Rule 131 Declaration to the PTO on February 9, 2007, Henderson replied: "I want to address what I perceive is a potentially lethal blow to the integrity and validity of my patent portfolio from the incorrect declaration faxed to the PTO on Friday." (Tendler-Henderson E-mail Messages.) Henderson continued: "It will come out in litigation that the intellect device shown to Hashimoto in July 1993 HAD NO WAY of displaying a picture on a two line alphanumeric display, contrary to my recent inaccurate declaration." (*Id.*) (emphasis in original.)[10] In addition to indicating that Henderson knew that the

---

[9] Tendler produced the e-mail exchange on January 10, 2014 in response to a subpoena issued by the *HTC Corp.* defendants. (HTC Reply at 2, 2 n.2.) Defendants in this case filed their Reply to Plaintiff's Opposition to their pending motion that same day, and provided the same e-mail exchange as an additional exhibit. (E-mail from Robert Tendler to Daniel Henderson (Feb. 10, 2007, 5:01 PM), Ex. 20 to Defs.' Reply in Supp. of Defs.' Mot. [162], hereinafter "Tendler-Henderson E-mail Messages.")

[10] The record here does not reveal what prompted Henderson to make this admission, but his message reflects his concern that the declaration, if discovered to be fraudulent, could "invalidate the entire patent portfolio." (Tendler-Henderson E-mail Messages.) In response, Tendler advises Henderson that the false declaration "is fixable with complete candor with the USPTO." (*Id.*) Henderson obviously did not choose this route, as the Federal Circuit observed, "[n]owhere did the [revised] declaration openly advise the PTO of Mr.
(continued . . . )

8

declarations he filed with the PTO were false, his e-mail also suggests that the attorneys at the Niro firm, who represent Plaintiff in this case, may also have been aware that the declarations were false: Henderson concluded his e-mail message to Tendler by asking Tendler to "contact Cliff Kraft *at Niro's office* to see what their take is on this development." (*Id.*) (emphasis added.)[11]

The HTC defendants seized on the language implicating Niro, Haller & Niro in this message by asking Plaintiff's counsel at that firm to produce documents related "to when the Niro firm learned that Henderson's Rule 131 declarations were false." (Mot. to Compel in *HTC Corp.*, No. 09-cv-2945 [276], hereinafter "HTC Mot. to Compel," at 2.) When Niro, Haller & Niro declined to produce all of the documents requested, invoking attorney-client privilege, the court granted the HTC defendants' motion to compel. (May 6 Op.) But, on May 8, 2014, perhaps in response to Plaintiff's allegations that counsel for HTC defendants, Sheppard, Mullin, Richter and Hampton LLP, have a conflict of interest (*see* Pl.'s Mot. to Disqualify, Ex. 1 to Pl.'s Mot. for Leave to File Under Seal [288]), the court stayed its May 6 Order. (*See* Min. Entry in *HTC Corp.*, No. 09-cv-2945 [293].)

Defendants in this case, as well, seek a declaration that the case is exceptional and an award of attorneys' fees. (Defs.' Mot.) Defendants argue that the case should be declared exceptional because Plaintiff engaged in inequitable conduct in obtaining the patent and misconduct in the current infringement suit, and because the suit was frivolous. (*Id.*) Plaintiff

---

Henderson's misrepresentations, as our precedent clearly requires." *HTC Corp.*, 732 F.3d at 1343.

[11] Tendler was suspended from practicing before the PTO in January 2014 in relation to the false statements contained in the February 9, 2007 Rule 131 Declaration. *See In the Matter of Robert K. Tendler*, Proceeding No. D2013-17 (USPTO), *available at* http://e-foia.uspto.gov/Foia/ReterivePdf?system=OED&flNm=0755_DIS_2014-01-08. He also is currently under disciplinary investigation before the Massachusetts Board of Bar Overseers. Mass. Bd. of Bar Overseers, http://massbbo.org/bbolookup.php (search "Robert Tendler") (last visited May 30, 2014).

objects to this request. (Pl.'s Opp. to Defs.' Mot. [160], hereinafter Pl.'s Opp.")  With respect to inequitable conduct, Plaintiff argues that its defense against the inequitable conduct claim in *HTC Corp.* was not frivolous: the issue of inequitable conduct has not been litigated in this case, and Plaintiff has attempted to reduce Defendants' litigation costs throughout the case. (Pl.'s Opp. at 4–5.)  Furthermore, Plaintiff denies committing any litigation misconduct, and notes that most of the alleged misconduct took place in other cases. (*Id.* at 5–6.)  This case was not frivolous, Plaintiff urges, because it was neither objectively baseless nor brought in bad faith. (*Id.* at 7–12.)  Finally, Plaintiff urges that even if the court finds that the case is exceptional, it should not award attorneys' fees. (*Id.* at 15.)  The court will address the parties' arguments below.

### DISCUSSION

**I.   Standard of Review**

Section 285 of the Patent Act allows the court to award attorneys' fees to the prevailing party in "exceptional cases." 35 U.S.C. § 285.  The determination whether to award fees is a two-step process.  First, the court must determine whether the case is exceptional, and if so, second, it must consider whether an award of fees is appropriate.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012).  Congress did not define "exceptional," and until recently, courts awarded attorneys' fees under Section 285 only where "there has been some material inappropriate conduct" or where the litigation is "brought in subjective bad faith" and "objectively baseless." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1752 (2014) (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)).

Recently, however, in *Octane Fitness*, the Supreme Court abrogated *Brooks Furniture* and held that an exceptional case is not restricted to two specific circumstances, but instead "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated." 134 S. Ct. at 1756. *Octane Fitness* instructs courts to determine whether a case is exceptional by means of a "case-by-case exercise of their discretion, considering the totality of the circumstances," which include factors such as " 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " 134 S. Ct. at 1756, 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The Supreme Court rejected the *Brooks Furniture* requirement that the party seeking fees prove its entitlement by clear and convincing evidence. A preponderance of the evidence is sufficient to support a finding that a case is exceptional under Section 285. *Id.* at 1758.

## II. Defendants' Motion

### A. Plaintiff's inequitable conduct makes this case exceptional

First, Defendants argue that the court should find the case exceptional and award attorneys' fees under Section 285 because Plaintiff engaged in inequitable conduct by making false statements to the PTO in order to obtain the patents at issue. (Defs.' Mot. at 1–2.) Plaintiff responds that the case is not "exceptional" because its defense against the claim of inequitable conduct was not frivolous, and the issue of inequitable conduct was not addressed in this case. (Pl.'s Opp. at 4–5.) Additionally, Plaintiff observes that it took steps to reduce Defendants' litigation costs throughout the duration of this case. (*Id.* at 5.) For the reasons explained here, the court agrees with Defendants that Plaintiff's inequitable conduct before the PTO in securing the patent makes this case exceptional under Section 285.

The purpose of Section 285 is not to punish the losing party, but rather, to compensate the prevailing party for the costs incurred due to the losing party's "unreasonable conduct." *Octane Fitness*, 134 S. Ct. at 1753, 1757; *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur."). Plaintiff cites several pre-*Octane*

*Fitness* Federal Circuit cases for the proposition that the standard for finding a case exceptional is "limited" and "exacting." (Pl.'s Opp. at 3) (citing *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed. Cir. 2011); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003).) To the extent that these cases restrict the standard for finding a case exceptional to the two circumstances outlined in *Brooks Furniture*, they are no longer good law. The court recognizes, however, that insofar as the imposition of fees under Section 285, even after *Octane Fitness*, remains an exception to the American Rule, the standard for finding a case exceptional befits its definition—"uncommon," "rare," or "not ordinary." *Octane Fitness*, 134 S. Ct. at 1756.

In *Octane Fitness*, the Supreme Court overturned the Federal Circuit's "rigid and mechanical formulation," which had confined exceptional cases to two limited circumstances, replacing it with a discretionary, factors-based approach. *Id.* at 1754, 1756. Inequitable conduct may serve as grounds for finding a case exceptional, but there is no *per se* rule of exceptionality. *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008). Nor are all cases that involve inequitable conduct necessarily exceptional. Plaintiff cites *Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363, 1377–78 (Fed. Cir. 2002) and *Isco International, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 511–12 (D. Del. 2003) as some examples, and there are likely others. (Pl.'s Opp. at 4.) In both *Frank's Casing* and *Isco International*, the courts found inequitable conduct after the losing party withheld information from the PTO, but declined to award attorneys' fees under Section 285 on these grounds. *Frank's Casing*, 292 F.3d at 1376–78 (withheld name of additional true inventor); *Isco Int'l*, 297 F. Supp. 2d at 500 (withheld information).

There are also circumstances, however, in which a patentee's inequitable conduct is sufficient to support a finding that the case was exceptional. *Nilssen* provides an example of such circumstances. 528 F.3d at 1358. Inequitable conduct in that case included the patentee's "misclaiming small entity status and improperly paying small entity maintenance fees,

12

failing to disclose related litigation, misclaiming the priority of earlier filing dates, withholding material prior art, and submitting misleading affidavits to the Patent and Trademark Office." *Id.* at 1356. The district court found the case exceptional and awarded attorneys' fees, and the Federal Circuit affirmed. *Id.*; *see also Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379–80 (Fed. Cir. 2006) (exceptional case where patentee engaged in inequitable conduct by withholding prior art).

In this case, Plaintiff's conduct is more egregious than that of the patent holders in *Frank's Casing* or *Isco International*. In those cases, the courts found inequitable conduct after the losing party withheld information from the PTO. *See Frank's Casing*, 292 F.3d at 1376; *Isco Int'l*, 297 F. Supp. 2d at 500. Indeed, Plaintiff's inequitable conduct arguably exceeds that of the patent holder in *Nilssen*, which was found exceptional; the patentee there withheld information and submitted "misleading," but not necessarily false, affidavits to the PTO. 528 F.3d at 1356. Plaintiff here made affirmative, false representations to the PTO about having reduced the patented invitation to practice in order to "swear behind" prior art. Both the district court and the Federal Circuit found that this conduct, in addition to submission of the "misleading" Smithsonian press release to the PTO during prosecution, demonstrated a "pattern of deceit." *HTC Corp.*, 732 F.3d at 1345. Even more disturbing, there is evidence that Plaintiff knew that the declarations were false when he made them in 2007.[12] (*See* Tendler-Henderson E-mail Messages) (characterizing the February 9, 2007 declaration as "factually inaccurate" and "incorrect," and stating that "the intellect device shown to Hashimoto in July 1993 HAD NO WAY of displaying a picture on a two line alphanumeric display, contrary to my recent inaccurate declaration") (emphasis in original.) Plaintiff failed to correct the false declarations with the

---

[12] If trial counsel was indeed made aware of the false declarations, Rule 11 sanctions may also be a possibility. *See Octane Fitness*, 134 S. Ct. at 1756–57 (distinguishing "exceptional" conduct required to award fees under Section 285 from "independently sanctionable" conduct).

PTO, and after obtaining the patents at issue, proceeded to sue twenty-four companies within the wireless industry, including the six defendants in this case, for infringement of the patents obtained on the strength of declarations that he knew to be false.

*Octane Fitness* has broadened the standard for finding exceptional circumstances supporting an award of fees, but such a finding might be appropriate even if *Brooks Furniture* were controlling, as it was when the parties briefed this motion. Under the *Brooks Furniture* standard, a case is exceptional only "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, *fraud or inequitable conduct in procuring the patent*, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [Rule 11], or like infractions," or where "the litigation is brought in subjective bad faith" and "is objectively baseless." 393 F.3d at 1381 (emphasis added). Plaintiff IW relies on the *Brooks Furniture* framework to support its argument that a case is exceptional only where "the losing party has engaged in some sort of egregious behavior." (Pl.'s Opp. at 1, 3.) But this is exactly the type of behavior that Plaintiff exhibited: the Federal Circuit affirmed the district court's finding of inequitable conduct in procuring the patent because "Henderson engaged in *affirmative egregious misconduct* when he filed a false declaration." *HTC Corp.*, 732 F.3d at 1344 (emphasis added). The *Octane Fitness* standard gives the court more flexibility in determining whether, under the totality of the circumstances, a case is exceptional. The court is satisfied that the test is met and an award of attorneys' fees under Section 285 is appropriate.

Plaintiff's arguments to the contrary are unpersuasive. First, Plaintiff argues that because its defense against the inequitable conduct claim in *HTC Corp.* was not frivolous, Judge Hart's finding of inequitable conduct does not make the case exceptional. (Pl.'s Opp. at 4.) Judge Hart did not grant summary judgment on the issue of inequitable conduct, Plaintiff notes, but instead, heard evidence at a bench trial before making findings. Similarly, the Federal Circuit entertained oral argument on appeal, and issued its decision in a precedential written opinion. (*Id.*) (citing *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1379 (Fed. Cir. 2011)

("Indeed, the fact that this court held oral argument and issued a precedential written opinion in the first appeal suggests that we did not regard the case as frivolous."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir 1989) ("[W]e find it difficult to agree that the inequitable conduct defense was 'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts.").) Yet these facts also can support the inference that the case is exceptional. As Defendants point out, the Federal Circuit's decision in *HTC Corp.* was the first Federal Circuit opinion since *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) in which the court found that the patent applicant had engaged in "affirmative egregious misconduct"[13] before the PTO, suggesting that the case was so troublesome that a written, precedential opinion was necessary to illustrate the new exception to the but-for materiality requirement. (Defs.' Reply in Supp. of Defs.' Mot. [162], hereinafter "Defs.' Reply," at 5.)

Furthermore, Plaintiff's claim that its defense was not frivolous is undermined both by the Federal Circuit's opinion, and by Henderson's own admission, in February 2007, that he had submitted false statements to the PTO. With respect to at least the materiality prong of the test for inequitable conduct, the Federal Circuit characterized Plaintiff's arguments on appeal as "entirely without merit." 732 F.3d at 1344. Having acknowledged to its own attorney that his February 2007 declaration to the PTO was false (*see* Tendler-Henderson E-mail Messages), Plaintiff's challenge to the inequitable conduct finding was a non-starter. No party is ever "reasonably justified" in making false statements to the PTO or to the court.

Next, Plaintiff argues, the court should not award attorneys' fees under Section 285 because the inequitable conduct issue was litigated in a different case, and an award of fees

---

[13] The Federal Circuit in *Therasense* tightened the standards for proving inequitable conduct by requiring "specific intent to deceive the PTO" and "but-for materiality," but provided an exception to the but-for materiality requirement "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit . . . ." 649 F.3d at 1290–92.

15

without an inequitable conduct finding in *this* case does not comport with the purpose of Section 285. (Pl.'s Opp. at 4–5) (citing *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310 n.1 (Fed. Cir. 2012), *vacated and remanded in* 134 S. Ct. 1744 (2014) (holding that appellate courts must apply an abuse of discretion standard when reviewing Section 285 determinations).) In *Highmark*, the Federal Circuit upheld an award of attorneys' fees under Section 285, but not on grounds of the patentee's misrepresentations to a transferor court; those misrepresentations were deemed insufficient to support the transferee court's finding that the case was exceptional. 687 F.3d at 1318–19. The court observed that "The purpose of section 285, unlike that of Rule 11, is not to control the local bar's litigation practices—which the district court is better positioned to observe—but is remedial and for the purpose of compensating the prevailing party for the costs it incurred . . . .". *Id.* at 1309 n. 1.

Plaintiff is correct, then, that Section 285 focuses on the harm to the prevailing party, not on penalizing the wrongdoer. *Octane Fitness*, 134 S. Ct. at 1753, 1757; *Kilopass*, 738 F.3d at 1313. Unlike the circumstances in *Highmark*, however, the wrongful conduct at issue here, though presented in another case, is also what makes this case exceptional; had Plaintiff not filed false declarations with the PTO, Plaintiff likely would not have obtained the patents at issue nor sued the Defendants here for infringement. *Therasense* referred to "the remedy for inequitable conduct [as] the 'atomic bomb' of patent law," because such a finding "renders the entire patent unenforceable," and may also "render unenforceable other related patents and applications in the same technology family," "spawn antitrust and unfair competition claims," "lead[] potentially to an award of attorneys' fees under 35 U.S.C. § 285," and "prove the crime or fraud exception to the attorney-client privilege." 649 F.3d at 1288–89. The bomb appears to have dropped here. Plaintiff here may be held accountable, under Section 285, for legal fees incurred in defending a case alleging infringement of patents obtained by filing false declarations with the PTO. *See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001) (declining to limit attorneys' fees to cost of successful defense, and

reasoning that the accused infringers "would not have incurred any of the fees generated in defense of this suit had [patentee] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [patentee] to have been improperly obtained"); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999) (summarizing Supreme Court's holding in *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971), and holding that "[a]n unrelated accused infringer may likewise take advantage of an unenforceability decision under the collateral estoppel doctrine"); *Nilssen v. Gen. Elec. Co.*, No. 06-cv-4155, 2008 WL 4921354 at *5 (N.D. Ill. Nov. 12, 2008) (holding that plaintiffs are collaterally estopped from re-litigating whether case is exceptional after a separate case involving the same patents is declared exceptional because of inequitable conduct).

Finally, Plaintiff argues that the court should not find this case exceptional because Plaintiff took steps to lower Defendants' litigation costs. (Pl.'s Opp. at 5.) Plaintiff notes it agreed to stay discovery until Defendants' motions and Judge Hart's bench trial were resolved, and moved to dismiss the case without prejudice after Judge Hart rendered his decision. Citing district court cases from other circuits, Plaintiff urges the court to consider these steps and decline to find this case exceptional. In *Torin Corp. v. Philips Industries, Inc.*, 625 F. Supp. 1077 (S.D. Ohio 1985), the court declined to award attorneys' fees under Section 285 despite the fact that the plaintiff failed to notify the PTO of prior art that would have prevented the patent from issuing, in part because the court found that these events took place twenty years before the litigation began, and the plaintiff had acted "fairly and expeditiously" during the litigation and tried to minimize costs. *Id.* at 1092–93, 1097. The court in *Dodge-Regupol, Inc. v. RB Rubber Products, Inc.*, No. 3:06-CV-236, 2010 WL 1342918 (M.D. Pa. Mar. 31, 2010) likewise declined to award attorneys' fees under Section 285, noting that the plaintiff had voluntarily dismissed the case after the issue of inequitable conduct was raised, but before it was decided, and concluding, in light of additional factors, that attorneys' fees were inappropriate. 2010 WL

1342918 at **1, 6. Recognizing that the decision to award attorneys' fees under Section 285 is an extremely fact-specific inquiry, neither of these cases is directly relevant. The conduct at issue here appears to be more egregious than the circumstances of those cases. Plaintiff's efforts to reduce costs are welcome, but those efforts are relevant to calculating the amount of fees to be awarded, not to determining whether the case is exceptional.

In addition to inequitable conduct in connection with the patent prosecution, Defendants also argue that this case is exceptional because Plaintiff engaged in litigation misconduct by filing "false complaints" and leveraging settlement agreements by disclosing incomplete information concerning its agreement with Motorola, and because the lawsuit is frivolous. (Defs.' Mot. at 10–14.) Plaintiff responds, arguing that most of the alleged misconduct took place in other lawsuits, and denies that any statements contained in its complaint here were false. (Pl.'s Opp. at 5–6.) Nor was the lawsuit frivolous, Plaintiff urges, because its claim construction was reasonable, the court denied summary judgment of its indirect infringement claim, and the patent was presumed to be valid when Plaintiff filed suit. (Pl.'s Opp. at 8–10.)

The court need not resolve the question whether Plaintiff engaged in litigation misconduct but notes that Defendants' concerns appear to be valid. In a verified interrogatory response submitted to defendants in *HTC Corp.* in September 2010, Henderson admitted that "[w]hile there were some mockups of Mr. Henderson's invention, there was not an actual reduction to practice of the inventions of the '186 or the '416 patents either before or after the constructive reduction to practice." (Trial Tr. Vol. 3-B, June 7, 2012 in *HBC Corp.*, No. 09-cv-2945 [229] at 484:8–487:12.) Yet, despite this admission, Henderson filed this suit a month later on October 20, alleging that the Smithsonian had received his "prototype for a wireless picturephone device" and quoting a *PC Today* article as stating that "Daniel A. Henderson put together a couple of prototypes" in 1993. (Compl. ¶ 3.) Such statements are at a minimum misleading, and can fairly be read to imply that Henderson had created a working prototype of the patented inventions as early as 1993. This conduct, coupled with affirmative, false

18

declarations submitted to the PTO in order to procure patents, suggests the "pattern of deceit" recognized by the Federal Circuit in affirming the finding of inequitable conduct.

Furthermore, it appears likely that during settlement negotiations with at least sixteen companies, including a former Defendant in this suit (Garmin), Plaintiff withheld the Addendum to its settlement agreement with Motorola. *See supra* note 6. Concealment of the potential reimbursement provision of the Motorola license suggests a lack of good faith in the settlement negotiations. Plaintiff had an obvious interest in suggesting, to other alleged infringers, that a sophisticated litigation opponent had paid $5,000,000 for a license in an arm's length transaction. The fact that Motorola stood to recover its license fee in full, were Plaintiff to negotiate additional licenses, would have been of obvious interest to other Defendants. In the end, however, the court need say no more concerning those negotiations. Plaintiff's inequitable conduct in procuring the patents here, alone, makes this case exceptional under Section 285.

### B. Attorneys' fees are appropriate

Finally, Plaintiff argues that even if the court finds that the case is exceptional, it should not award attorneys' fees because, now that the patents have been declared unenforceable, such an award would "not serve the interests of judgment." (Pl.'s Opp. at 15.) After a court has found a case to be exceptional under Section 285, it must then determine whether to award attorneys' fees, and not all exceptional cases require such an award. *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). In determining whether to award attorneys' fees, the trial judge considers "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." 781 F.2d at 201. Citing *McKesson Information Solutions Inc. v. Bridge Medical, Inc.*, No. S-02-2669 FCD KJM, 2006 WL 2583025 at *1 (E.D. Cal. Sept. 6, 2006), Plaintiff urges the court not to award attorneys' fees despite Plaintiff's inequitable conduct. (Pl.'s Opp. at 15.) In *McKesson*, after finding that the case was exceptional, the district court declined to award attorneys' fees, in part because the patent

holder-plaintiff did not participate in the inequitable conduct, which had occurred twenty years earlier, and also because the plaintiff's claims and defenses were not frivolous, it did not use "vexatious litigation tactics" or any other litigation misconduct, and the parties were fairly matched.  2006 WL 2583025 at *1, *6–9.  Unlike the plaintiff in *McKesson*, Plaintiff here knew that the statements contained in the declarations were false, and directly participated in inequitable conduct by signing the declarations, filed with the PTO, that contained the false statements.  Requiring Plaintiff to bear the costs of Defendants' attorneys' fees in defending this infringement action will "serve the interests of judgment" because it addresses "unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force." *See Octane Fitness*, 134 S. Ct. at 1753 (internal citation and quotations omitted). Plaintiff offers no other reason why its inequitable conduct does not warrant attorneys' fees in this suit, and the court concludes that such an award is warranted.

## **CONCLUSION**

Because Plaintiff engaged in inequitable conduct to procure the patents at issue here, the court finds that this case is exceptional, and that attorneys' fees are appropriate under Section 285 of the Patent Act.  The court, therefore, grants Defendants' motion [154] and directs the parties to procedures outlined in Local Rule 54.3.

ENTER:

Dated:  May 30, 2014

REBECCA R. PALLMEYER
United States District Judge

20