**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INTELLECT WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.: 10 C 6763 |
| v. | ) | |
| | ) | The Honorable Rebecca R. Pallmeyer |
| SHARP CORPORATION, SHARP | ) | |
| ELECTRONICS CORPORATION, | ) | |
| HEWLETT-PACKARD COMPANY, | ) | |
| PALM, INC., DELL INC., AND | ) | |
| GARMIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DELL INC.'S MOTION FOR FEES**

## TABLE OF CONTENTS

I.    Introduction ................................................................................................................ 1

II.   Legal Standards .......................................................................................................... 1

III.  Response to Specific Objections of IW .................................................................... 3

    A.   Excessive and/or Duplicative Billing .................................................................. 3

        1.   Motion to Dismiss Hearing ........................................................................ 3

        2.   Summary Judgment Briefing ...................................................................... 5

    B.   Block Billing ........................................................................................................ 7

    C.   Work Performed After the Case Was Stayed ..................................................... 10

    D.   Vague and/or Unsupported Time Entries ........................................................... 11

    E.   Hourly Rates ...................................................................................................... 12

IV.   Conclusion ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Blum v. Stenson*,
 465 U.S. 886 (1984)...........................................................................................................15

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*,
 421 F. Supp. 2d 1117 (N.D. Ill. 2006) ...............................................................................11

*Central Soya v. Geo. A. Hormel & Co.*,
 723 F.2d 1573 (Fed. Cir. 1983)...........................................................................................12

*Farfaras v. Citizens Bank and Trust of Chicago*,
 433 F.3d 558 (7th Cir. 2006) .....................................................................................2, 7, 10

*Gibson v. City of Chicago*,
 873 F. Supp. 2d 975 (N.D. Ill. 2012) ....................................................................................9

*Gratz v. Bollinger*,
 353 F. Supp. 2d 929 (E.D. Mich. 2005)...............................................................................14

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)..................................................................................................... passim

*Huss v. IBM Med. and Dental Plan*,
 No. 07-cv-7028, 2010 WL 2836743 (N.D. Ill. July 15, 2010), *rev'd on other grounds*,
 418 Fed. Appx. 498, 2011 WL 1388543 (7th Cir. April 13, 2011) ......................................8, 9

*In re Synthroid Mktg. Litig.*,
 264 F.3d 712 (7th Cir. 2001) ..............................................................................................11

*IW, Inc. v. HTC Corp.*,
 No. 09-cv-2945, 910 F. Supp. 2d 1056 (N.D. Ill. 2012)..............................................6, 12, 13

*Johnson v. Georgia Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ........................................................................................15, 16

*Mirabal v. General Motors Acceptance Corp.*,
 576 F.2d 729 (7th Cir. 1978) ................................................................................................2

*National Gypsum Co. v. Steel Sys. Int'l, Inc.*,
 No. 85-cv-2134, 1988 WL 135780 (D. Or. Dec. 13, 1988)....................................................15

*Pickett v. Sheriden Health Care Ctr.*,
 664 F.3d 632 (7th Cir. 2011) ........................................................................................14, 15

*State of Ill. v. Sangamo Const. Co.*,
    657 F.2d 855 (7th Cir. 1981) ................................................................................................2

**OTHER AUTHORITIES**

Local Rule 54.3 ................................................................................................................1

Local Rule 54.3(d) ...........................................................................................................1

## I. INTRODUCTION

Defendant Dell Inc. ("Dell") hereby moves for an award of attorney's fees and nontaxable expenses in the amount of $381,591.69 between October 2010 and July 31, 2014.[1]

This Court found that this case was "exceptional" within the meaning of 35 U.S.C. § 285 and ordered the parties to comply with Local Rule 54.3(d) [Dkt. No. 168], which states, in pertinent part, that the parties "shall confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." Accordingly, on June 20, 2014, counsel for Dell provided Intellect Wireless, Inc. ("IW") with detailed fee information pursuant to Local Rule 54.3(d), including the time and work records for which compensation would be sought, specifying on an hourly basis the fees and expenses incurred between October 2010 and May 31, 2014. (6/20/2014 Anderson Ltr. to Vickrey [Ex. 1].)[2] IW predictably objected to virtually everything. The points still in dispute between the parties are set forth in the attached Joint Statement, attached hereto as Appendix A.

## II. LEGAL STANDARDS

"District courts have broad discretion in making attorney's fee awards." *Mirabal v. Gen. Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978). In determining the amount of an attorneys' fee award, "[t]he district court is accorded significant deference in fee matters because: (1) it possesses 'superior understanding of the litigation and [there exists a] desirability of avoiding frequent appellate review of what essentially are factual matters'; (2) the need for

---

[1] Dell's total fee request is derived from the $324,190.15 discussed in the Joint Statement, plus an additional $57,401.54 for time spent between June 1, 2014 and July 31, 2014. [*See* Ex. 4 to Anderson Decl.] Dell has continued to incur fees and expenses after July 31, 2014, because IW has contested virtually everything. Dell reserves the right to supplement its petition to reflect fees and expenses incurred after July 31, 2014.

[2] Exhibits cited herein are attached to the Aug. 29, 2014 Declaration of Kimball R. Anderson, filed concurrently with Dell's Motion.

uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding 'a second major litigation' strictly over attorneys' fees is high." *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (quoting *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995)). "The trial judge is in the best position to assess the skill and competency of counsel, the novelty or difficulty of the case, the benefits of the result achieved, and the reasonableness of the time counsel devoted to the case.'" *State of Ill. v. Sangamo Const. Co.*, 657 F.2d 855, 862 (7th Cir. 1981).

Determination of the fee award begins with multiplying the hours spent on the litigation by an hourly rate. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This amount may then be adjusted by the Court upward or downward based on equitable considerations and the facts specific to the case. *Hensley*, 461 U.S. at 434 ("There remain other considerations that may lead the district court to adjust the fee upward or downward.").

The fee amount may be adjusted upward based upon the level of success achieved. "[T]he level of a plaintiff's success is relevant to the amount of fees to be awarded." *Id.* at 430. Where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

### III. RESPONSE TO SPECIFIC OBJECTIONS OF IW

IW has provided five categories of objections to Dell's attorneys' fee request and associated hour entries. Most of IW's objections are made in boilerplate fashion, with little or no explanation or justification. We address IW's objections below.

### A. EXCESSIVE AND/OR DUPLICATIVE BILLING

IW objects that "excessive and duplicative fees ($57,973.71) should not be recoverable from IW." (8/4/2014 Mahalek Ltr. to Anderson at 2 [Ex. 3].) According to IW, these fees are comprised of 48.4 total hours "simply preparing for a motion to dismiss hearing" and "58.1 hours on Dell's Summary Judgment brief." (*Id.*) IW's objections are not well-founded in light of the complexity of the case, the results obtained, and the amount of fees requested. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (a district court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.")

### 1. Motion to Dismiss Hearing

IW has provided no support whatsoever for its objection to 48.4 total hours that it characterizes as "simply preparing for a motion to dismiss hearing." In fact, IW has not even identified the specific line items that correspond to the 48.4 hours that it objects to. Although a number of billing entries were identified (*see* Joint Statement [App'x A] at 2-3), the hours and descriptions do not all appear to directly correspond to this objection. IW also fails to specify what it contends would constitute a "reasonable" amount of time to perform this task.

At the initiation of this case, Dell filed a Motion to Dismiss [Dkt. No. 50] which was presented on December 21, 2010. At that time, Dell's motion was entered and continued, while IW was granted leave to file an Amended Complaint. *See* Minute Entry [Dkt. No. 56]. IW then filed an Amended Complaint which eliminated all of the "method" claims asserted against Dell

in response to arguments raised in Dell's motion. These changes to the Complaint addressed some, but not all, of the issues raised in Dell's motion.

As a result, Dell renewed its Motion to Dismiss on January 21, 2011 [Dkt. No. 64]. At that time, Dell's motion was entered and continued, and a briefing schedule was set. *See* Minute Entry [Dkt. No. 67]. Dell's comprehensive Motion to Dismiss identified in detail how and why the divided infringement rule precluded IW's direct infringement claim, and how IW's indirect infringement claims were defective. Contrary to IW's efforts today to characterize Dell's Motion to Dismiss as one based upon some type of simplistic technicality, at the time of its filing IW complained that the motion presented an argument on the merits and "that Dell's 'motion to dismiss' is more akin to a motion for summary judgment of non-infringement based on its own interpretation of the identified apparatus claims." (Opp'n to Motion to Dismiss [Dkt. No. 80] at 4.) Sensing the vulnerability of its position, IW demanded leave in its Opposition to amend the Complaint for a second time. (*Id.* at 15.)

On May 27, 2011, the Court heard oral argument on Dell's Motion to Dismiss as well as those of co-defendants Sharp Electronics Corp., Hewlett-Packard Co., and Palm, Inc. The nearly two-hour hearing resulted in the Court granting Defendants leave to file a Motion for Summary Judgment:

> Oral argument held on 5/27 2011. Pending motions to dismiss rely most heavily on Defendants' argument that the phrase operably coupled in the patent-in-suit must be interpreted consistently with the Federal Circuit's construction of "operatively joined" in *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1299 (Fed. Cir. 2005). The argument may be a compelling one, but IW suggests there are distinctions between the phrasing of its patent and the one at issue in *Cross Medical*, and the court is reluctant to render a dispositive ruling that rests on claim construction or invalidity issues at the Rule 12(b)(6) stage. The pending motions to dismiss [50, 64, 73, 76] are therefore denied without prejudice. Defendants have leave to file a motion for summary judgment of invalidity, if appropriate, within 28 days. Parties are encouraged to explore the possibility of settlement.

Minute Entry [Dkt. No. 91]. Considering the issues raised by the Motion to Dismiss (as reflected in the Court's Minute Entry), Dell's Motion to Dismiss required substantial preparation time. The issues were multi-faceted and complex.

Although IW now objects to 48.4 hours of time it characterizes as "simply preparing for a motion to dismiss hearing," it does not specifically identify which hours from Dell's billing entries it objects to. Instead, IW listed 17 Dell time entries dated from somewhere between February 24, 2011, to May 28, 2014, totaling 64.8 hours, that are generically characterized as "duplicative and/or excessive." (*See* Joint Statement [App'x A] at 2-3.) But, as is evident just from the dates of these entries, many are not directed to preparation for the May 27, 2011 hearing, such as the May 28, 2014 entry from three years *after* the hearing. Other entries, such as "Review of IW's response to Dell's motion to dismiss," are likewise not directed to hearing preparation. Further, IW provides no clues as to what makes the specified billed time excessive, apparently arguing that any time spent on hearing preparation was excessive. IW likewise provides no indication of how any of these entries are duplicative, or what work was duplicated. This objection is simply groundless.

### 2. Summary Judgment Briefing

Next, IW predictably objects to the time devoted to Dell's motion for summary judgment, but IW provides no support for its boilerplate objection that time spent on Dell's Summary Judgment brief was "duplicative and/or excessive." IW objects to 58.1 hours of time, but has not identified any items from Dell's billing entries that correspond to the objected time, nor has IW specified a competing "reasonable" amount of time to draft such a brief that ultimately resulted in the elimination of the largest part of IW's cause of action.

As described above, the Court granted leave for Dell to file its motion for Summary Judgment after hearing argument on the Motion to Dismiss. Dell filed its Motion for Summary

Judgment [Dkt. No. 104] on June 28, 2011, which was followed by briefing by the parties. The Court issued its opinion and order on March 9, 2012, ruling that "Defendants, who only supply devices capable of being coupled to a message center, cannot be direct infringers because they do not supply, control, or use the message center" (Opinion and Order [Dkt. No. 132] at 14), thereby eliminating the most significant portion of IW's cause of action and leaving only a claim for induced infringement. (This last vestige of IW's original case against Dell was finally eliminated by the finding of inequitable conduct in *Intellect Wireless, Inc. v. HTC Corp.*, No. 09-cv-2945, 910 F. Supp. 2d 1056 (N.D. Ill. 2012).)

Through the filing of its Motion for Summary Judgment, Dell was ultimately successful in eliminating the most significant portion of IW's cause of action, the allegations of direct infringement. As noted, the substance underlying this motion was first raised in Dell's Motion to Dismiss, thereby giving IW the opportunity at that time to withdraw its allegations of direct infringement. Instead, IW persisted in its legally untenable position, while continuing to assert patents that it knew were procured by fraud on the Patent Office.

IW's objections to Winston & Strawn LLP's billing entries relating to the preparation of Dell's Motion for Summary Judgment are not well-founded. This time would not have been necessary but for IW's unwarranted pursuit of its infringement action premised on fraudulently procured patents. The success of Dell in eliminating IW's main cause of action justifies the modest fees that Dell expended preparing its dispositive motion. Furthermore, IW has failed to provide any indication of how or why specific billing entries constitute "duplicative and/or excessive" fees that cannot be reimbursed. Considering the outcome of this case and the fact that Dell's total fees and expenses are less than half of the average cost of a typical patent infringement case, Dell's requested reimbursement is reasonable.

### B.   BLOCK BILLING

The next objection by IW is that certain Dell billing entries, listed in Section II(B) of the Joint Statement, are in what IW characterizes as a "block billing" format and therefore "should not be awarded, or should be reduced by a percentage as block billed time entries."  (Joint Statement at 4.)  IW's contention is incorrect and not supported by either the facts or the law.

Contrary to IW's argument, and without agreeing with the characterization of Winston & Strawn's billing entries, there is no general industry or judicial prohibition of "block billing." "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice."  *Farfaras*, 433 F.3d at 569.  With regard to billing entries, the requirement is that attorneys seeking fees "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437.  And, as noted by the Supreme Court, "counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Id.* at n.12.

The criticism of block billing arises from entries written in such a way as to hinder the ability to determine whether or not the time spent on matters and tasks is reasonable and related to the claim at issue.  "Block billing is typically grounds for reducing an award in two instances. First, when the entry relates to more than one case, or more than one aspect of the same case, not all of which are compensable, and it is not possible to determine the amount of time spent on each."  *Huss v. IBM Med. and Dental Plan*, No. 07-cv-7028, 2010 WL 2836743, at *6 (N.D. Ill. July 15, 2010), *rev'd on other grounds*, 418 F. App'x 498, 2011 WL 1388543 (7th Cir. April 13, 2011).  "Second, block billing may justify reducing an award when the entries lack enough specificity to determine if the time spent on each task is reasonable."  *Id.*

IW's block billing objection in this case is groundless because it is not based on the substance of the billing entries, but solely on their formatting. The billing entries at issue are clearly related to the claim at issue, contain sufficient detail to enable a reviewer to determine what tasks were performed, and then assess if they were reasonable in time.

Further, the entries are nearly identical in style to IW's billing entries. For example, the Dell January 27, 2011 entry of 1.3 hours that IW objects to states: "*Prepare for and present motion to dismiss at court hearing; update K. Anderson and client re same; review new Federal Circuit case re same.*" [Ex. 1 at 7.] IW objects to this entry despite the fact that it is clearly directed to compensable tasks; contains sufficient specificity to enable a reviewer to determine the tasks performed; and is reasonable in the amount of time spent. In addition, this entry is nearly identical to IW's own January 27, 2011 entry of 1.9 hours for "*Preparing for and attending hearing on motion to dismiss; researching and reviewing case law and secondary sources related to Dell's motion to dismiss complaint; drafting and revising opposition to said motion; discussion re opposition to motion to dismiss with DJM.*" (7/11/2014 Mahalek Ltr. to Anderson [Ex. 2] at 13.) Considering that these entries track almost perfectly with each other, IW has no legitimate objection regarding these entries related to: 1) relevance to the case and whether such cost is compensable; 2) inability to discern what tasks were performed; or 3) reasonableness of the time spent. These arguably would be the only legitimate objections that IW could have made.

Other Dell billing entries characterized by IW as "block billing" describe constituent elements inherent in a particular task. For example, the Dell January 5, 2011 entry of 7.3 hours states: "*Search, review and analysis of prior art references; development of invalidity defenses and claim charts.*" [Ex. 1 at 6.] As reflected in this entry, developing an invalidity defense may

involve elements of incorporating prior art elements into an invalidity claim chart, determining which elements remain missing, searching for prior art references that disclose the missing element, analyzing the prior art, and turning back to incorporate such elements into the invalidity claim chart. As described by another court, "[h]ere, the entry descriptions themselves appear to be sufficient to establish the reasonableness of the time spent despite Defendant's claims of block billing, as many of the entries essentially address a single task." *Huss*, 2010 WL 2836743, at * 6; *see also, Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012) ("Although several entries combine discrete tasks without specifying the amount of time spent on each task, the combined tasks are related and were performed in connection with the same end product.") Dell's billing entries are reasonable because these different parts are integral, intertwined components of a task that is clearly related to the claim.

IW's objection to these entries sets form over function and conflicts with the Supreme Court's statement that "counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437. Entries might legitimately be criticized as block billing if they are not specific enough to allow the respondent to make specific challenges to particular entries as irrelevant or excessive. IW does not, however, challenge specific entries on those bases. Instead, IW challenges these entries because they include too much detail of how a particular task was performed, penalizing entries for including additional detail of elements related to the performance of a task.

IW also makes the gratuitous comment that "Block-billing by IW's attorneys is irrelevant." (8/4/2014 Mahalek Ltr at 3.) The billing records of IW's attorneys, however, provides helpful insight into the legitimacy of IW's objections. "Although the defendants object to the use of block billing and 'vague' descriptions by Farfaras's counsel, the defendants'

counsel used similarly vague descriptions and block billing." *Farfaras*, 433 F.3d at 569. IW argues that Winston & Strawn's billing records "obfuscate how much time was spent on each task, thus rendering it impossible to determine the reasonableness of the time, and money, spent on any given task." (8/4/2014 Mahalek Ltr at 3.) This criticism, however, is not well-founded. Moreover, the billing entries of IW's attorneys show that a similar number of hours were spent on similar tasks and are described in the same manner, illuminating the veracity of IW's allegation.

Finally, the sufficiency and reasonableness of billing entries submitted by Dell's attorneys for reimbursement is supported by the fact that Dell is a sophisticated client that previously evaluated and approved these bills. (Anderson Decl. at ¶ 10.) "Sophisticated clients are aware of the need for more specific information in support of the hours claims . . . ." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1123 n.1 (N.D. Ill. 2006). As a large consumer of legal services, Dell retains a number of different law firms to represent it in patent matters, and Dell also employs highly knowledgeable in-house counsel that evaluate all bills submitted by its attorneys for payment. (*Id.*) Thus, Dell is particularly well-placed to both compare and to evaluate the sufficiency and reasonableness of billing entries submitted by its various outside counsel. "Likewise the amount of itemization and detail required is a question for the market. If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

### C.   WORK PERFORMED AFTER THE CASE WAS STAYED

The next objection by IW is that "any time billed between the entry of the stay of March 23, 2012 and the attorney fee briefing in 2014 was unnecessary and should not be compensable." (8/4/2014 Mahalek Ltr. to Anderson at 8.) The Federal Circuit, however, has explicitly stated

that "[t]he purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Cent. Soya v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). Dell's monetary outlays in the defense of this case necessarily included continued representation by its attorneys during the duration of the stay in this case.

The stay referenced by IW was entered in this case [Dkt. No. 136] pursuant to Defendants' motion to stay pending the ruling on the issue of inequitable conduct in *Intellect Wireless, Inc. v. HTC Corp. et al.*, No. 09-cv-2945 (N.D. Ill.). As reflected in the Dell billing entries identified by IW (*see* Joint Statement at 10), costs incurred by Dell during the stay were related to analysis of ongoing related case proceedings, attendance at status hearings, and continued development of resulting defenses arising from the proceedings. These costs are compensable because they directly resulted from the filing of this case by IW. The Federal Circuit "interpret[s] attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Cent. Soya*, 723 F.2d at 1578. The imposition of a stay did not dispense with the need for Dell to have continued representation related to preparation and defense of this case. The costs that IW objects to were all incurred in the preparation for and performance of legal services related to the suit.

### D.   VAGUE AND/OR UNSUPPORTED TIME ENTRIES

IW next objects to certain billing entries that "do not appear to be related to this litigation, are not sufficiently supported for Dell to recover its fees and/or are too vague for Dell to obtain a recovery." (8/4/2014 Mahalek Ltr. at 10.) Admittedly, 23 of the entries that IW identifies under this objection (Joint Statement at § II(D)) have redactions of the description that limit or prevent the ability to determine if the described task is relevant to this case. As such,

Dell will make unredacted versions of these billing entries available for *in camera* review at the Court's request.

Of the remaining seven entries under this objection, the February 13, 2012 entry, as well as the May 26, 2011 expenses, have been withdrawn. The other billing entries do not have redactions, and they provide sufficient detail to enable a reviewer to determine the relevance and reasonableness of the billing entry. Although IW has not provided objections to specific entries, the May 15 and 29, 2014 entries are clearly directed to gathering information regarding the related *HTC* action that precipitated the stay of this case, and are both relevant and reasonable in time for the tasks described. The November 8, 2010 and August 22, 2011 entries involve communications with Dell employees whose names would be known by the Dell billing reviewer as having been contacted for purposes of this case. The July 4 and 5, 2011 entries involve reviewing interrogatory responses and claim charts from the related *Intellect Wireless v. Kyocera* case. *See* No. 08-c-1350 (N.D. Ill.) These documents provided information to Dell relevant to this case and were useful, among other things, to identify positions taken by IW in this case. These, like the other entries submitted, therefore constitute compensable costs accrued in Dell's defense of this case.

### E.     HOURLY RATES

Finally, IW objects to the average hourly rates presented in Dell's fee submission used to determine the total amount of compensation sought. The average billing rates applied by Dell in the calculation of its attorneys' fees are: ███████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████ According to IW, the calculation of attorneys' fees should instead be determined using the billing rates of the Niro, Haller, & Niro firm, specified as being: ████████

███████████████████████████████████████████

███████████████████████████████████████████ (Joint

Statement at §II(E).)  IW cites no authority for the proposition that a party's recovery of

attorneys' fees is limited by its adversary's counsel's billable rate.  Other courts have commented

on the irrelevance of such information.  *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 947 (E.D. Mich.

2005) ("As an initial matter, the Court finds the hourly rates charged by Defendants' attorneys

and the hours those attorneys expended defending against plaintiffs' lawsuit of no particular

value to its determination of plaintiffs' fees award.")

　　　The Seventh Circuit has "defined a reasonable hourly rate as one that is 'derived from the

market rate for the services rendered.'"  *Pickett v. Sheriden Health Care Ctr.*, 664 F.3d 632, 640

(7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)).  Further, "[w]e

presume that an attorney's actual billing rate for similar litigation is appropriate to use as the

market rate."  *Id.*  These actual billing rates are assessed in view of the rates that comparable

attorneys charge for similar services.  "To inform and assist the court in the exercise of its

discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the

attorney's own affidavits – that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and

reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "A rate determined in this way is

normally deemed to be reasonable, and is referred to – for convenience – as the prevailing

market rate."  *Id.*  Here, the rates are reasonable as evidenced, in part, by the facts set forth in the

accompanying Declaration of Kimball R. Anderson.

　　　The direct comparison of billing rates can be complicated by the fact that "[t]he type of

services rendered by lawyers, as well as their experience, skill and reputation, varies extensively

– even within a law firm.  Accordingly, the hourly rates of lawyers in private practice also vary widely."  *Blum*, 465 U.S. at 895 n.11.  These variations from the mean may be accounted for by factors such as attorney experience, skill, and reputation.  "[B]oth the Supreme Court and this court have instructed courts to rely on the hourly rates that attorneys of comparable skill, experience, and reputation charge for similar work."  *Pickett*, 664 F.3d at 641.  The Supreme Court has also found relevant to this analysis the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) which include, in relevant part to this case, the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and the nature and length of the professional relationship with the client.  *Hensley*, 461 U.S. at 430 n.3 (1983); *see also, Nat'l Gypsum Co. v. Steel Sys. Int'l, Inc.*, No. 85-cv-2134, 1988 WL 135780, at *3 (D. Or. Dec. 13, 1988) (client entitled to recover its Chicago patent attorney rates because attorney was "its patent counsel for many years and was familiar with National's patent rights.")

A comparison of Dell's billing rates with nationwide average billing rates for intellectual property attorneys as reported in the Report of the Economic Survey (2013), published by the American Intellectual Property Law Association, is attached as Exhibit 5 to the Declaration of Mr. Anderson.  As can be seen from the comparison, the average billing rates given for Dell's attorneys are in line with the average rates given for intellectual property attorneys.  Rates for Dell's attorneys' with 1-4 years experiences fit within the average ranges given.  Associates with 10-14 years of intellectual property experience, transitioning to partner or of counsel positions, either fit within the first to third quartile rates or are within the relevant rates for firms with over 150 intellectual property attorneys.  Partners with greater experience likewise fit into range of relevant rates for firms with over 150 intellectual property attorneys.

Further, Dell's attorney billing rates are reasonable in view of the various factors to consider when performing a billing rate analysis and no reduction in Dell's billing rates is warranted. Winston & Strawn LLP has represented Dell in many patent cases in the past five years. (*See* Anderson Decl. ¶ 10.) In this case, as discussed above, the overall results obtained for Dell were excellent, resulting in a dismissal with prejudice of all claims and an exceptional case finding, all at an overall cost to Dell of half of the average associated with the defense of patent cases brought by non-practicing entities such as IW. (*See* AIPLA 2013 Report at 35 [Ex. 6].) With regard to the attorneys, Winston & Strawn LLP's Intellectual Property group has over 200 attorneys practicing intellectual property law and is well-regarded in the field of patent litigation, being chosen as one of four finalists for The American Lawyer's 2014 IP Litigation Department of the Year. (*Id.* at ¶ 8.) The more senior individual attorneys that billed to this matter have extensive experience in patent litigation. (*Id.* at ¶¶ 9, 12-14.) And, with regard to attorneys that had fewer years of relevant experience, "[i]f a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

## IV.    CONCLUSION

Dell respectfully requests that the Court award Dell its fees and expenses incurred in the defense of this case in the amount of $381,591.69. IW's objections do not justify the reduction of the amount of compensation requested.

Dated:  August 29, 2014

Respectfully submitted,

By:  /s/Kimball R. Anderson

Kimball R. Anderson
Kathleen B. Barry

-15-

WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
kanderson@winston.com
kbarry@winston.com

*Attorneys for Defendant Dell Inc.*

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on August 29, 2014, I electronically filed the foregoing **DELL INC.'S MOTION FOR FEES** with the Clerk of the Court for the Northern District of Illinois using the ECF System, which will send notification to counsel of record.  I also certify that I have sent the paper by Email to the following counsel:

Paul K. Vickrey
Niro, Haller & Niro
181 West Madison Street
Suite 4600
Chicago, IL 60602

*Attorneys for Plaintiff, Intellect Wireless, Inc.*


/s/ Kimball R. Anderson

Kimball R. Anderson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
kanderson@winston.com

*Attorney for Defendant Dell Inc.*