**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTELLECT WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHARP CORPORATION, SHARP ELECTRONICS CORPORATION, HEWLETT-PACKARD COMPANY, PALM, INC., DELL INC., AND GARMIN INTERNATIONAL, INC., <br><br> Defendants. | The Hon. Rebecca R. Pallmeyer <br><br> Civil Action No. 10 C 6763 |

**SHARP CORPORATION AND SHARP ELECTRONICS CORPORATION'S
MOTION FOR FEES AND EXPENSES AND MEMORANDUM REGARDING
REASONABLENESS OF COSTS PER LOCAL RULE 54.3**

Sharp Corporation and Sharp Electronics Corporation (collectively, "Sharp") hereby moves pursuant to the Court's May 30, 2014 Opinion and Order (Dkt. No. 168) and Local Rule 54.3 for an award of attorney's fees and nontaxable expenses incurred by Sharp in this case.

**INTRODUCTION**

In its May 30, 2014 Memorandum Opinion & Order, this Court properly found that Plaintiff Intellect Wireless, Inc. ("IW") was guilty of "egregious" conduct in submitting "affirmative, false representations" to the U.S. Patent Office. The Court further found that IW "proceeded to sue twenty-four companies within the wireless industry, including the six defendants in this case, for infringement of the patents obtained on the strength of declarations that he knew to be false." Thus, the Court ruled that this is an exceptional case under Section 285

of the Patent Act, and determined that Defendants were entitled to an award of attorneys' fees.[1] Sharp should recover the "attorneys' fees it should not have been forced to incur."[2] Sharp should never have incurred any of its fees or expenses here, because IW should never have brought this case. After finding that an award of attorneys' fees is appropriate in this case, the Court directed the parties to procedures outlined in Local Rule 54.3.[3]

Consistent with the Court's Order and the procedure outlined in Local Rule 54.3, Sharp provided IW with time and work records supporting Sharp's request for attorneys' fees. IW objected to Sharp's requests nearly in their entirety. IW's objections are wholly unfounded. Thus, Sharp hereby respectfully submits its Memorandum in support of the reasonableness of the fees and costs it seeks.

A "party seeking an award of attorney's fees has the burden of proving the 'reasonableness of the hours worked and the hourly rates claimed.'"[4] Here, Sharp is confident that the Court will find that the hours logged and the hourly rates charged by Sharp's counsel were reasonable and sufficiently documented. For the period through and including April of 2014, Sharp respectfully requests that this Court award Sharp fees of $536,400.28 and related nontaxable expenses of $39,166.78, plus interest at prime. Sharp is further seeking the fees and related nontaxable expenses incurred through and including this Motion and any related future activity, including, but not limited to, any necessary motions and efforts to enforce and collect upon a judgment by this Court granting Sharp its fees and costs.

---

[1] Dkt. No. 168 at 13-14.

[2] *See id*. at 11 (citing *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013)).

[3] *Id.* at 20.

[4] *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-204, 2012 WL 3716961, at *2 (N.D. Ill. Aug. 27, 2012).

**ARGUMENT**

I.  **Sharp's Attorneys' Hourly Rates Are Reasonable.**

The hourly rates claimed by Sharp's attorneys are reasonable.[5] "Courts presume that an attorney's actual billing rate is an appropriate market rate."[6] Moreover, as the court stated in *Sloan Valve Co. v. Zurn Indus., Inc.*, "When a client pays the attorney's bill at a time when indemnification or reimbursement is uncertain, it is strong evidence of the reasonableness of the attorney's hourly rate."[7] Here, Sharp's attorneys' rates are typical of those other attorneys have charged and received from their other clients. In addition, Sharp has always paid its legal bills for this matter without any certainty (or even expectation) that it would be reimbursed. Thus, there should be no question about the reasonableness of the rates charged by Sharp's counsel.

Further, the effective hourly rates that Sharp paid its counsel have already been discounted 10% from the normal hourly rates those counsel.[8] These discounted hourly rates are more than reasonable based on the market for competent patent litigation counsel. Remarkably, IW challenges these rates even though they are consistent with (or in certain cases, even lower than) the hourly rates purportedly charged by IW's own counsel.[9]

Accordingly, the rates charged by Sharp's counsel are reasonable.

II. **Sharp Is Entitled to Its Fees And Expenses for All Defenses.**

Sharp is not limited to recovering the attorneys' fees it expended on successful defenses, but is entitled to all of the fees and costs that it incurred defending this case. The Federal Circuit

---

[5] *See* Exhibit A, Joint Statement at 2-3.

[6] *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-204, 2012 WL 3716961, at *2 (N.D. Ill. Aug. 27, 2012) (outside counsel's rates were reasonable when they are typical of those received from other clients).

[7] *Id.*

[8] *See* Exhibit A, Joint Statement at 2-3.

[9] Compare Exhibit A, Joint Statement, ¶ 2 (rates in table) with ¶ 3 (rates cited by IW).

declines "to limit attorneys' fees to the cost of successful defense," because "the accused infringers 'would not have incurred any of the fees generated in defense of this suit had [IW] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [IW] to have been improperly obtained.'" (Dkt. 168 at 16-17 (quoting *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001)).) *See also Mathis v. Spears*, 857 F.2d 749, 756 (Fed. Cir. 1988) ("the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). The "court is not required to have 'parsed out the charges for fees incurred in connection with the presentation of' an issue on which it lost 'from all other fees [that party] incurred in defense of' the case." *Nilssen v. Gen. Elec. Co.*, No. 06 C 04155, 2011 WL 633414, 2011 U.S. Dist. LEXIS 13615, at *38 (N.D. Ill. Feb. 11, 2011) (quoting *Brasseler*, 267 F.3d at 1386). Accordingly, Sharp is entitled to its fees and expenses in connection with developing all reasonable defenses in this case.

## II. IW's Objections Are Meritless.

Pursuant to this Court's orders and Civil Local Rule 54.3, Sharp provided IW with records supporting a fee request.[10] IW's initial response failed to provide the specificity required by the local rules. IW later sent a supplemental objection. This supplemental objection identified four purported problems with Sharp's fee request.[11] Specifically, IW complained that Sharp's fee requests included "duplicative and/or excessive" time, "vague" time entries, block billed time entries, and billing for work performed after the Court stayed the case. As set forth below, all of

---

[10] *See* Exhibit B, Sharp Time and Fee Records.

[11] *See* Exhibit A, Joint Statement at Exhibit 1 (IW's objections). IW makes a number of general, overlapping objections that fail to identify specifically which fees and amounts are in dispute. Such general, unspecific objections are without merit and the Court can therefore ignore them. *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994) (party challenging fees request has a "responsibility to state objections with particularity and clarity"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985).

these objections are unfounded and should be rejected.

A.    **Sharp's Time Entries Are Not Excessive or Duplicative.**

IW challenges the reasonableness of certain tasks performed as excessive and/or duplicative. However, mere assertions of excess or duplication are insufficient to sustain these objections. In *Heiar v. Crawford County, Wis.*, the Seventh Circuit stated that a court reviewing a fees application

> "must do more than eyeball the request... He has to make a judgment—considering the nature of the case and the details of the request, taking evidence if need be, and defending his judgment in a reasoned (though brief) opinion—on what the case should have cost the party who submitted the request."[12]

In other words, the number of hours attorneys devote to a particular task cannot alone determine whether the fees are reasonable. Context is important. For example, courts in this district have found that *800 hours spent drafting a complaint was not excessive*.[13]

IW's charge that several Sharp attorneys duplicated each other's efforts is not supported by the time records. Cases as complex and difficult as this one often require a collective effort from several attorneys—even on the same task. As long as the attorneys did not all do the same thing, the courts have found it reasonable for multiple attorneys to bill time to the same project. Thus, in *Dupuy v. McEwen*, the court found "that although several attorneys devoted time to the same issue, it is generally clear that they were not duplicating work. Often, one attorney was obviously the draftsman of a court filing, and the other the primary editor."[14] Similarly here, this court cannot, as IW urges, presume that the time multiple Sharp attorneys logged on the same

---

[12] *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1204 (7th Cir. 1984).

[13] *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1019 (N.D. Ill. 2009) (emphasis added).

[14] *Id*. at 1020.

project was duplicative. For example, the entries spanning March 18, 2011, to March 30, 2011, indicate that Christopher Broderick and Steven Reynolds split, based upon argument sections, the initial drafting of the Reply on Sharp's Motion to Dismiss, that Chris Mizumoto reviewed the draft in his capacity as Sharp's Japan counsel, and that Jeff Arrington revised and finalized the brief.

IW's contention that Sharp overbilled time to working with other defendants is also invalid. The courts have found that time spent collaborating or coordinating with co-counsel or co-defendants is not unreasonable or excessive. In *King v. State Bd. Of Elections*, the court ruled that "hours spent discussing strategy with co-counsel about [a] case are not unreasonable or excessive."[15] And in *Golden v. Nadler, Pritikin & Mirabelli, LLC*, the court found that time spent reviewing the court's decisions concerning co-defendants was not excessive, stating that it found the billed time to be a "a conscientious monitoring [sic] the progress of the overall case."[16] In this case, Sharp's counsel had good reason to monitor other cases and to consult with joint defense counsel, because IW asserted essentially the same claims against several other defendants in multiple matters. Indeed, the outcome of the *Intellect Wireless vs. HTC* matter had a case dispositive impact on Sharp's case. Accordingly, Sharp had every interest in monitoring the progress and developments in the HTC case, in independently analyzing the issues that were to be tried in the HTC case (including their potential impact on Sharp's case), and generally in consulting with HTC's counsel and the counsel for Sharp's other co-defendants.

For the reasons above, it is clear that Sharp's fees are reasonable and not excessive or duplicative, and that the Court should overrule IW's objections to these billing entries.

---

[15] *King v. State Bd. Of Elections*, No. 95 C 827, 2003 WL 22019357, at *5 (N.D. Ill. Aug. 26, 2003).

[16] *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2008 WL 341374, at *4 (N.D. Ill. Feb. 1, 2008).

**B.      Sharp's Attorneys' Time Entries Are Not Vague.**

IW challenges certain billing entries on the ground they lack detail. These objections lack merit.[17] Sharp's entries "are detailed enough to allow the opposing party and the court to determine that the time billed accurately reflects the time spent on the case."[18]

Indeed, most of the time entries to which IW has objected contain more than enough information to allow IW and the Court to determine that the time billed accurately reflects time spent on the case. In fact, most of the time entries objected to by IW demonstrate not only that the time was spent on the case, but the issues in the case to which they relate.[19]

IW's vagueness objections regarding time entries about emails are meritless. Obviously, the entries refer to time attorneys devoted to writing and responding to emails concerning the litigation. Clients (and the Court) understand that emails are a dominant form of modern communication, and the simple description of "emails" conveys meaning about the type of work performed. Similarly, entries one might consider vague in isolation may not be "impermissibly vague when viewed in the context of the surrounding documentation."[20] For example, in *Berberena v. Coler*, the Seventh Circuit found that an entry that simply lists "'notes of meeting' follow[ing] an entry for the same date identifying a three-hour meeting to discuss settlement with opposing counsel… obviously refers to the memorializing of the three-hour meeting."[21] Here, any entries that IW claims are vague in isolation are not vague in the context of surrounding entries.

IW also has improperly objected to some redacted entries as vague. Sharp's redactions

---

[17] Sharp has acknowledged and agreed to strike entries that are impermissibly vague.

[18] *Dupuy*, 648 F. Supp. 2d at 1029.

[19] *See* Exhibit A, Joint Statement at Exhibit 1, IW Objections at pages 18-22.

[20] *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985).

[21] *Id.*

are permissible to "prevent disclosure of material protected by the attorney-client privilege or work product doctrine."[22] In any event, should this Court wish to see an unredacted version of any time entries, Sharp is amenable to submitting them to the Court for *in camera* review.

C.  **Sharp's Block Billed Entries Are Appropriate.**

IW asserted in its objections that the Northern District of Illinois has "consistently found block billing to be improper." This is not true. Indeed, numerous decisions, including from the Seventh Circuit, have found no problem with block billing:

- In *Dupuy v. McEwen*, the court declined to reduce awarded fees "based solely on the lumping together of some related activities on the attorneys' time sheets."[23]

- In *Mostly Memories Inc. v. For Your Ease Only, Inc.*, the court found "there is nothing inherently wrong" with the use of block-billing, and "if counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."[24]

- In *Farfaras v. Citizens Bank & Trust of Chicago*, the Seventh Circuit stated that "[a]lthough 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice."[25]

Here, the block billing entries IW objects to indicate that all billed time was for work on this case. Further, each of the tasks listed in the block billed entries (and separated by semicolons) contains substantial detail about the specific task performed. And none of the block-billed entries claim enough hours to call into question the reasonableness of the time spent on

---

[22] L.R. 54.3(d)(1).

[23] *Id*.

[24] *Mostly Memories Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 936 (N.D. Ill. 2009).

[25] *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F. 3d 558, 569 (7th Cir. 2006).

any particular task.

Remarkably, IW's *own* billing records demonstrate that it used block billing in the same way as in Sharp's time records.[26] This fact prevents IW from credibly objecting to Sharp's use of block billing. Local Rule 54.3's "purpose is to avoid exactly the type of hypocritical objections presented by [IW]. Although [IW] object[s] to the use of block billing and 'vague' descriptions by [HP's] counsel, [IW]'s counsel used similarly vague descriptions and block billing." *Farfaras*, 433 F. 3d at 569. Accordingly, Sharp is entitled to its full fees despite any of IW's unfounded and hypocritical objections based on block-billing.

D.  **Sharp Is Entitled to Reimbursement for Work Its Counsel Performed After the Court Stayed the Case.**

IW objects to all time billed between the entry of the stay in March 23, 2012 and the attorney fee briefing in 2014. IW asserts that because the Court stayed the case, the work logged by Sharp's counsel was unnecessary and not compensable. IW's assertions are unfounded. This district has upheld a fees award in circumstances similar to this case. For example, in *Nilssen v. General Elec. Co.*, the court granted most of the defendant's fees request over the plaintiff's objections, where "the overwhelming amount of the $214,000 in fees [the defendant] is seeking was incurred" after the grant of a stay.[27]

Similarly, this Court should award Sharp fees for work its counsel performed on its behalf after the entry of the stay on March 23, 2012. Even though the stay barred the parties from engaging in any formal adversarial litigation action, activities that were highly relevant to the case (and which turned out to be dispositive to the case) were ongoing. Specifically, Sharp was

---

[26] *See* Exhibit C, IW's Time Records. (Notably, it appears that IW provided a very limited set of time records related to its specific case against Sharp. Presumably, this is because much of IW's "true" time in this matter was logged in one or more other matter records associated with other defendants sued by IW (and/or other billing entries common to all defendants sued by IW). It is logical to expect that IW's work spent on other related matters overlaps to a large degree, if not entirely, with its work in the case against Sharp.)

[27] *Nilssen v. General Elec. Co.*, No. 06 C 04155, 22011 WL 633414, at *4 (N.D. Ill. Feb. 11, 2011).

9

analyzing and monitoring the inequitable conduct proceedings in the HTC action, including how the outcome of those proceedings could impact IW's related claims against Sharp. Similarly, as reflected by Sharp's time records, Sharp's counsel was also analyzing IW's related patents and the impact of the inequitable conduct issues on those related patents. All of Sharp's analysis regarding the inequitable conduct issues during the stay was reasonable, as confirmed by the fact that those inequitable conduct issues ended up being case dispositive in both the HTC case and this case. Accordingly, IW's objections should be dismissed

### V.     Sharp Is Entitled to Prejudgment and Postjudgment Interest for Its Claimed Fees and Expenses.

Sharp has expended numerous resources over nearly four years on a case that IW brought using patents it knowingly obtained through false declarations. IW never should have brought this litigation. In order to fairly compensate Shar, the Court should award both prejudgment and post-judgment interest for Sharp's attorneys' fees and expenses.

The Court has authority to award prejudgment interest on attorneys' fees awards under 35 U.S.C. § 285. *See, e.g., Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995); *Mathis*, 857 F.2d at 760-61. Prejudgment interest is an element of complete compensation, intended to compensate a party for the loss of use of its money. *West Virginia v. United States*, 479 U.S. 305, 310 (1987); *Local Okla. Bank, N.A. v. United States*, 452 F.3d 1371, 1378 (Fed. Cir. 2006); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). Failing to award prejudgment interest when a case was not brought in good faith results in less than full compensation. *Nilssen*, 2011 U.S. Dist. LEXIS 13615, at *42-45. In *Nilssen*, the Court awarded prejudgment and post-judgment interest on an attorneys' fees award when the patent was held to be invalid for inequitable conduct. *Id*. In fact, such interest is presumptively available in this case. *See Fortino v. Quasar Co.*, 950 F.2d 389, 397 (7th Cir. 1991) ("the purpose of prejudgment

10

interest is to make sure that an award of compensatory damages is fully compensatory and that it is a salutary purpose – as a matter of fact we have held that such interest is presumptively available in cases under federal law."); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Thus, the Court should award interest compounded monthly at the prime rate for all of Sharp's fees and expenses.

## VI.   Conclusion

It is clear that the hours worked and hourly rates claimed by Sharp's attorneys are reasonable and are documented with sufficient specificity. As a result, Sharp respectfully requests (1) that this Court should award Sharp its attorneys' fees of $536,400.28 and related nontaxable expenses of $39,166.78, plus interest at prime (compounded monthly) and (2) award Sharp its reasonable attorneys' fees and nontaxable expenses incurred through and including this motion and any related future activity, including, but not limited to, any necessary motions and efforts to enforce and collect upon a judgment by this Court granting fees and costs.

Date:  August 29, 2014

        By:  */s/ Steven J. Reynolds*
            Steven J. Reynolds

Steven J. Reynolds
(Ill. Bar No. 6293634)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601-1293
T. 312.368.4000
F. 312.368.6352
steven.reynolds@dlapiper.com

Richard de Bodo
Andrew V. Devkar
BINGHAM MCCUTCHEN LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, California  90404-4082
Telephone:     310.255.9070
Facsimile:      310.907.2070
andrew.devkar@bingham.com
richard.debodo@bingham.com

Attorneys for Defendants
*Sharp Corporation and Sharp Electronics Corporation*