**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTELLECT WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | The Hon. Rebecca R. Pallmeyer |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 10 C 6763 |
| SHARP CORPORATION, SHARP | ) | |
| ELECTRONICS CORPORATION, | ) | |
| HEWLETT-PACKARD COMPANY, PALM, | ) | |
| INC., DELL INC., AND GARMIN | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS HEWLETT-PACKARD COMPANY AND PALM, INC.'S FEE AND EXPENSE MOTION

## TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................................... 1

II.     HP SEEKS REASONABLE FEES FOR THIS EXCEPTIONAL CASE ............................. 1

III.     HP IS ENTITLED TO ALL OF ITS FEES AND EXPENSES ............................................. 3

      A.     IW Cannot Complain About Block Billing When It Did the Same ............................ 4

      B.     HP Was Justified in Developing Its Invalidity and Non-Infringement Positions .......................................................................................................... 6

      C.     The Joint Defense Work That IW Objects to as Duplicative Actually Reduced HP's Fees ............................................................................................... 7

      D.     HP Justifiably Analyzed the Henderson Deposition from Other Litigation as Part of Its Defense to This Litigation .......................................................... 8

      E.     HP Was Justified in Evaluating All of Its Litigation Options ..................................... 8

      F.     HP's Early Case Assessment Was Necessary and Tailored to Resolve the Case Quickly ............................................................................................... 9

      G.     HP Justifiably and Successfully Worked on Summary Judgment Briefing ............... 10

      H.     Local Counsel Actively Participated in This Litigation and Reduced Overall Fees and Expenses ................................................................................ 11

      I.     Work IW Describes as "Administrative" Was Necessary ......................................... 12

      J.     HP's Work from the Period the Case Was Stayed Through 2014 Was Reasonable and Necessary ........................................................................... 13

      K.     HP's Time Entries Are Descriptive and Minimally Redacted ................................... 13

      L.     HP's Fees Are Related to This Lawsuit ................................................................... 14

IV.     HP IS ENTITLED TO PREJUDGMENT AND POST-JUDGMENT INTEREST .............. 15

V.     CONCLUSION ..................................................................................................... 15

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Berberena v. Coler*
    753 F.2d 629 (7th Cir. 1985) ................................................................................... 14

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*
    267 F.3d 1370 (Fed. Cir. 2001) ............................................................................ 6, 9

*Dupuy v. McEwen*
    648 F. Supp. 2d 1007 (N.D. Ill. 2009) ............................................... 5, 6, 10, 12, 14

*Farfaras v. Citizens Bank & Trust of Chicago*
    433 F.3d 558 (7th Cir. 2006) ................................................................... 5, 11, 14

*Fortino v. Quasar Co.*
    950 F.2d 389 (7th Cir. 1991) ................................................................................. 15

*Gibson v. City of Chicago*
    873 F. Supp. 2d 975 (N.D. Ill. 2012) ...................................................................... 4

*Golden v. Nadler, Pritikin & Mirabelli, LLC*
    No. 05 C 0283, 2008 WL 341374 (N.D. Ill. Feb. 1, 2008) .................................... 12

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*
    874 F.2d 431 (7th Cir. 1989) ................................................................................. 15

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ............................................................................................... 4

*Hickory Farms, Inc. v. Snackmasters, Inc.*
    No. 05 C 4541, 2008 U.S. Dist. LEXIS 67762 (N.D. Ill. Apr. 2, 2008) .......... 1, 4, 10

*Hutchison v. Amateur Elec. Supply, Inc.*
    42 F.3d 1037 (7th Cir. 1994) ................................................................................... 3

*King v. State Bd. of Elections*
    No 95 C 827, 2003 WL 22019357 (N.D. Ill. Aug. 26, 2003) ............................. 8, 12

*Local Okla. Bank, N.A. v. United States*
    452 F.3d 1371 (Fed. Cir. 2006) ............................................................................. 15

*Mathis v. Spears*
    857 F.2d 749 (Fed. Cir. 1988) ....................................................................... 7, 9, 15

*Mostly Memories Inc. v. For Your Ease Only, Inc.*
  594 F. Supp. 2d 931 (N.D. Ill. 2009) ....................................................................................... 6

*Nilssen v. Gen. Elec. Co.*
  No. 06 C 04155, 2011 WL 633414, 2011 U.S. Dist. LEXIS 13615 (N.D. Ill. Feb. 11,
  2011)..................................................................................................... 1, 6, 9, 13, 15

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*
  776 F.2d 646 (7th Cir. 1985)................................................................................................. 3

*Oiness v. Walgreen Co.*
  88 F.3d 1025 (Fed. Cir. 1996) ............................................................................................. 15

*In re Synthroid Mktg. Litig.*
  264 F.3d 712 (7th Cir. 2001)................................................................................................. 6

*Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*
  No. 06 C 950, 2007 WL 2688452 (N.D. Ill. Sept. 6, 2007) ...................................................... 5

*Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*
  69 F.3d 512 (Fed. Cir. 1995) ............................................................................................... 15

*West Virginia v. United States*
  479 U.S. 305 (1987) ........................................................................................................... 15

Statutes

35 United States Code section 285........................................................................................... 1, 15

Other Authorities

Local Rule 54.3 ......................................................................................................... 3, 5, 13

## I.     INTRODUCTION

Almost four years ago, Intellect Wireless, Inc. ("IW") filed this exceptional case against Defendants Hewlett Packard Corporation and Palm, Inc. (collectively, "HP").  This patent infringement case was premised on patents the inventor and his attorney fraudulently obtained from the U.S. Patent and Trademark Office.  The case never should have filed.  HP will never be able to recover the lost company and executive time spent defending IW's unreasonable conduct.  However, the Court can fulfill the purpose of Section 285, which is "to compensate the prevailing party for the costs incurred due to the losing party's 'unreasonable conduct.'"  (Dkt. 168 at 11.)  Indeed, there is legal precedent upon which to weigh the egregious nature of this lawsuit.  As this Court already held, IW's "disturbing" conduct in this case was "more egregious than that of the patent holders in *Frank's Casing* or *Isco International*" and "arguably exceeds that of the patent holder in *Nilssen*."  (*Id.* at 13.)  "Had [IW] not filed false declarations with the PTO, [IW] likely would not have obtained the patents at issue nor sued the Defendants here for infringement."  (*Id.* at 16.)  As the Court noted in its Order awarding fees, HP should recover the "attorneys' fees it should not have been forced to incur."  (*Id.* at 11.)  As documented in HP's invoices, IW forced HP to incur ████████ in fees and expenses plus those expended since the Court's Order awarding fees.  (Ex. 3; *Hickory Farms, Inc. v. Snackmasters, Inc.*, No. 05 C 4541, 2008 U.S. Dist. LEXIS 67762, at *32-34 (N.D. Ill. Apr. 2, 2008).)  HP never should have incurred any of these fees or expenses because IW never should have brought this case.

## II.    HP SEEKS REASONABLE FEES FOR THIS EXCEPTIONAL CASE

HP employed a small, core team of lawyers to fight IW's baseless lawsuit, i.e., a lawsuit that IW concedes was meritless from the beginning.  The core team defending this litigation included two partners and three associates, plus local counsel in Chicago.  This core team accounts for over 95% of the fees HP incurred during this litigation.  (Ex. 1.)  To supplement this

core team, and reduce overall fees, HP employed one junior associate at a lower billing rate, who focused on non-infringement and invalidity issues, and a number of paralegals and other specialized legal support staff at lower billing rates to prepare materials in conjunction with filings and other legal issues. This staffing is consistent with IW's team that employed six attorneys, including five making appearances in the case, plus other support staff.

In response to HP's reasonable request for its attorneys' fees, IW served duplicative and baseless objections, and refused to comply with the Local Rules designed to narrow issues for the Court. First, in violation of the Local Rules, IW refused to identify the amount of HP's fees that it deems reasonable. IW's failure to comply with the letter and the spirit of the Local Rules after HP's repeated requests for IW to cure its deficiency is grounds alone for granting HP's entire request for fees and costs.

Second, IW's objections are duplicative, such that many of HP's time entries are objected to on multiple grounds. Specifically, IW provided HP with 12 categories of objections. (Ex. 1.) For each category, IW provided a sum total of the objected to fees. The total objected to fees for these 12 categories equals ███████████ This is greater than the amount of fees that HP enumerated in the Joint Statement, i.e., ███████████ This left HP no reasonable way to determine the total fees to which IW objects.[1] IW wants the Court and HP to comb through IW's 39 pages of objections, cross-reference the objections with HP's invoices, and then add up the line items that IW has **not** objected to in order to determine the fees that IW deems reasonable. IW's methodology is not only inefficient and unreasonable, but it is contrary to the explicit language (and spirit) of Local Rule 54.3, which requires that IW identify "the total amount of

---

[1] For example, had IW complied with the Local Rules and specifically identified $400,000 in non-objectionable fees, the Court could better determine the appropriate amount of fees at or

fees and/or related nontaxable expenses that respondent deems should be awarded" and that "the respondent shall include a similar table giving respondent's position as to the name, compensable hours, appropriate rates, and totals for each biller listed by movant."  IW's refusal to comply with the Local Rules only serves to increase the amount of attorneys' fees that HP incurred preparing this motion.  HP respectfully requests that the Court grant HP all of its requested fees and also its fees incurred in preparing this motion.

### III.    <u>HP IS ENTITLED TO ALL OF ITS FEES AND EXPENSES</u>

HP is entitled the full amount of the attorneys' fees and costs it incurred in this litigation. All of HP's actions in this litigation were reasonable and directed at defending itself after IW "proceeded to sue twenty-four companies within the wireless industry, including six defendants in this case, for infringement of the patents obtained on the strength of declarations that he knew to be false."  (Dkt. 168 at 13-14.)

Even if the Court were to determine that it should reduce some of HP's fees, the overlapping nature of IW's objections prevents the Court from reasonably doing so in this case. IW makes a number of general, overlapping objections to HP's fees requests that fail to identify specifically which fees and amounts are in dispute and those that are not.  (Ex. 2.)  Such general, unspecific objections are without merit and the Court should ignore them.  *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994) (party challenging fees request has a "responsibility to state objections with particularity and clarity"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985).  As noted previously, IW objects to more fees than HP has even enumerated.  This is because IW includes the same billing entries under multiple categories of objections.  For example, IW objects to the same billing entries for HP's

above $400,000.  As it stands, both HP and the Court are left to speculate as to the range of fees

work on misjoinder issues and its objection to HP's fees for what IW describes as block billing. If the Court adjusted HP's fees for its work on misjoinder issues and also adjusted HP's fees for what IW describes as block billing, then the Court would have to further determine which entries IW included in both categories before determining the appropriate adjustment. (*See, e.g.,* Ex. 2 at 7-8, 28-29 (Buccigross entries on 05/04/2011 and 05/05/2011).)  Therefore, the Court should deny IW's objections in their entirety.

The remainder of this section of the brief addresses each of IW's objections and sets forth the reasons why IW's objections are inappropriate:

### A.     IW Cannot Complain About Block Billing When It Did the Same

Despite employing the same billing practices throughout this litigation, IW argues that the Court must reduce HP's fees because the fees are allegedly block billed.  However, the time entries about which IW now complains are not in fact block billed.  The Supreme Court notes that "counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Attorneys are not required to break down "individual, but related tasks, into single billing entries." *Hickory Farms*, 2008 U.S. Dist. LEXIS 67762, at *21.  Rather, work being performed in connection with the same end product is sufficiently related to be billed in a single entry. *Id.*; *see also Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012) ("Although several entries combine discrete tasks without specifying the amount of time spent on each task, the combined tasks are related and were performed in connection with the same end product.").  For example, IW complains about billing by Stephen Korniczky on August 3, 2011 in which he▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

at issue.

████████████████████████████████ This billing entry is all centered on preparing HP's reply in support of its motion for summary judgment, which is a single end product.

Moreover, the Court should reject IW's argument because IW engaged in the same billing practices about which it now complains. (Ex. 4.) For example, IW billed a single entry for ██████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* at 3.) In another, IW billed over ████████ in single billing entries on summary judgment issues. (*Id.* at 16-22.) It is contrary to the purpose of Local Rule 54.3 to allow IW to object to billing practices and activities in which it similarly engaged. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (Local Rule 54.3's "purpose is to avoid exactly the type of hypocritical objections presented by [IW]. Although [IW] object[s] to the use of block billing and 'vague' descriptions by [HP's] counsel, [IW]'s counsel used similarly vague descriptions and block billing.").

Finally, the Court should reject IW's argument regarding any alleged block billing because the Seventh Circuit specifically allows this practice. The Seventh Circuit has repeatedly stated that courts need not reduce fees simply because of block billing. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras*, 433 F.3d at 569. In fact, "block billing [is] not surprising 'in a case this large and complex, where attorneys perform multiple tasks on any given day.'" *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2009) (quoting *Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, No. 06 C 950, 2007 WL 2688452, at *4 (N.D. Ill. Sept. 6, 2007)). The appropriate inquiry is not whether the tasks are block billed, but "whether the entries are detailed enough to allow the opposing party and the court to determine that the time billed accurately reflects the time spent

on the case." *Id.* Here, the entries IW disputes clearly reflect time billed to this case. In addition, the alleged block billing entries were acceptable to HP, which paid each of the invoices in question. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("the amount of itemization and detail required is a question for the market. If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."); *Mostly Memories Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 936 (N.D. Ill. 2009) (noting there is nothing inherently wrong with block billing and that courts should not require more detail than paying clients request). Thus, the Court should not reduce HP's fees for what IW describes as block billing.

### B. HP Was Justified in Developing Its Invalidity and Non-Infringement Positions

HP is not limited to the attorneys' fees it incurred preparing its successful defenses, but is entitled to all of the fees and costs that it incurred defending this case. As the Court is aware, the Federal Circuit declines "to limit attorneys' fees to the cost of [only a] successful defense," because "the accused infringers 'would not have incurred any of the fees generated in defense of this suit had [IW] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [IW] to have been improperly obtained.'" (Dkt. 168 at 16-17 (quoting *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001)).) The "court is not required to have 'parsed out the charges for fees incurred in connection with the presentation of' an issue on which it lost 'from all other fees [that party] incurred in defense of' the case." *Nilssen v. Gen. Elec. Co.*, No. 06 C 04155, 2011 WL 633414, 2011 U.S. Dist. LEXIS 13615, at *38 (N.D. Ill. Feb. 11, 2011) (quoting *Brasseler*, 267 F.3d at 1386).

IW disputes HP's ability to collect attorneys' fees for developing its invalidity and non-

infringement positions (i.e., the core discrete issues in every patent case), because the Court decided the case based on inequitable conduct without moving forward to infringement and invalidity contentions. (Exs. 1-2.) The Court, however, should not limit fees for HP's work on any of its defenses. HP could not know which of its defenses the Court would ultimately find persuasive—or which defenses necessarily would sustain an appellate challenge. In fact, the Court granted partial summary judgment of non-infringement, which is separate from inequitable conduct. (Dkts. 131, 132.) The Federal Circuit allows attorneys' fees for unsuccessful defenses and those not decided. *Mathis v. Spears*, 857 F.2d 749, 756 (Fed. Cir. 1988) ("the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). The Court should allow HP to receive its fees for all its defenses, including non-infringement and invalidity, even if the Court did not address them specifically.

### C.    The Joint Defense Work That IW Objects to as Duplicative Actually Reduced HP's Fees

Surprisingly, IW argues that fees HP spent working on joint defense issues are excessive and duplicative. However, HP's work with co-defendants Garmin, Sharp, and Dell greatly reduced the total attorneys' fees incurred in this litigation, rather than duplicating work as IW contends. IW chooses to ignore that it determined the parties it named in this litigation, i.e., HP, Sharp, Dell, and Garmin. Having grouped multiple defendants together and alleged that they infringe the same fraudulently obtained patents, IW takes the unreasonable position that each of the Defendants should have worked entirely independently. This argument is transparent and contrary to IW's demands of how the litigation should proceed. (*See* Ex. 5 (requiring Defendants to confer to maintain the same schedule for attorneys' fees issues).)

Rather than researching, writing, and filing separate, duplicative motions at each stage of the case, Defendants often worked together by dividing up assignments to conserve resources

while defending against IW's frivolous claims. In doing so, HP was required to review and edit some work in which co-Defendants took the lead in drafting. It is inconceivable for HP to join a pleading without reading, contributing, and ensuring the accuracy of it before filing. Working together on joint projects, when possible, actually reduced each Defendant's overall fees. Hours "spent discussing strategy with co-counsel about [a] case are not unreasonable or excessive." *King v. State Bd. of Elections*, No 95 C 827, 2003 WL 22019357, at *5 (N.D. Ill. Aug. 26, 2003).

**D.     HP Justifiably Analyzed the Henderson Deposition from Other Litigation as Part of Its Defense to This Litigation**

IW objects to ▓▓▓▓▓▓▓▓ in fees for reviewing, analyzing, and discussing the deposition transcripts of Daniel Henderson from another litigation. (Ex. 1.) Henderson is the inventor of the patents-in-suit, the CEO of IW, and the person who lied to the patent office in order to obtain the patents-in-suit. IW's only argument is that Henderson was not deposed in this case, so it was "needless[]" for HP to review Henderson's other depositions. As the Court made clear in awarding attorneys' fees against IW, Henderson is the central figure in this litigation. Henderson "failed to correct false declarations with the PTO, and after obtaining the patents at issue, proceeded to sue twenty-four companies within the wireless industry, including six defendants in this case, for infringement of the patents obtained on the strength of declarations that he knew to be false." (Dkt. 168 at 13-14.) Investigating Henderson's actions and analyzing his prior deposition testimony was justified. For example, it was necessary as HP developed its inequitable conduct defense (which ultimately led to dismissal of this case) and as it developed its non-infringement and invalidity defenses.

**E.     HP Was Justified in Evaluating All of Its Litigation Options**

IW objects to HP's fees incurred while investigating whether to file a motion for misjoinder, which it ultimately decided not to pursue. IW argues that because the project did not

culminate in HP filing a motion to sever, HP is not entitled to fees. IW is wrong in all regards.

After looking at relevant case law and the specific facts of this litigation, HP completed its analysis of the misjoinder issue and prepared a memorandum on whether to file a motion to sever in this case. Ultimately, HP determined that a motion to sever was not in its best interests, and did not file the motion. But, whether HP filed a motion is not the relevant inquiry. The Federal Circuit declines "to limit attorneys' fees to the cost of [only a] successful defense," because "the accused infringers 'would not have incurred any of the fees generated in defense of this suit had [IW] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [IW] to have been improperly obtained.'" (Dkt. 168 at 16-17 (quoting *Brasseler*, 267 F.3d at 1386).) The "court is not required to have 'parsed out the charges for fees incurred in connection with the presentation of' an issue on which it lost 'from all other fees [that party] incurred in defense of' the case." *Nilssen*, 2011 U.S. Dist. LEXIS 13615, at *38 (quoting *Brasseler*, 267 F.3d at 1386). Likewise, the Federal Circuit allows attorneys' fees for unsuccessful defenses and those not decided. *Mathis*, 857 F.2d at 756 ("the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). Thus, over IW's sole objection that HP never filed a motion, HP is entitled to its attorneys' fees relating to misjoinder.

### F. HP's Early Case Assessment Was Necessary and Tailored to Resolve the Case Quickly

In order to properly defend its rights and fulfill its obligation to conduct a proper investigation before filing an answer and counterclaims, HP spent time assessing IW's allegations and developing a strategy for defending itself. IW objects that (1) the investigation was excessive and unreasonable, (2) three attorneys working on the project was "problematic," and (3) the time entries were block billed. (Ex. 2 at 9.) First, the ███████ P spent on an "early

case assessment" for investigating IW's multi-million dollar claim for patent infringement is far less than the 800 hours that a court found was appropriate for working on issues related to a complaint. *Dupuy*, 648 F. Supp. 2d at 1019. Second, the number of attorneys working on the case assessment was entirely appropriate. According to the entries IW identified, ██████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ As IW admits, "it is not uncommon for law firms to assign multiple attorneys to work together on projects." (Ex. 2 at 2.) It would be unreasonable for one attorney to be forced to work on such an important investigative project without the ability to consult with another attorney on strategic issues. *Dupuy*, 648 F. Supp. 2d at 1020 (noting that it is reasonable for one attorney to take the lead on the project while multiple attorneys edit and provide other support).

Third, as discussed above, the time entries for this early case assessment are not block billed. Attorneys are not required to break down "individual, but related tasks, into single billing entries." *Hickory Farms*, 2008 U.S. Dist. LEXIS 67762, at *21. As IW admits by classifying all of the work as "early case assessment" that these entries are related to the same project and, thus, not block billed. Finally, IW's billing records demonstrate that it also used block billing, which prevents IW from objecting to HP's fees on this basis. HP is entitled to its full fees for this work.

### G. HP Justifiably and Successfully Worked on Summary Judgment Briefing

The Court granted HP's summary judgment motion; dismissing IW's direct infringement allegations. (Dkts. 131, 132.) Yet, IW asserts that the ████████ spent on issues relating to summary judgment of non-infringement over the course of nine months was excessive and block billed. First, HP's work on summary judgment was not excessive and IW provides no authority that ████████ is inappropriate here. The summary judgment issues were complex in this case, as evidenced by the Court's willingness to grant Defendants a larger page limit for briefing the

issues. (Dkt. 109.) Further, IW filed supplemental authority on the summary judgment issue five months after initial briefing concluded, which necessitated a response from Defendants. (Dkts. 128, 129.) In addition, IW's own billing records indicate that it spent nearly ▮▮▮▮▮ on summary judgment issues. (Ex. 4 at 16-22.) Finally, as discussed above, IW's objection to alleged block billing is without merit. Moreover, here, IW block billed ▮▮▮▮▮ in single billing entries relating to summary judgment issues. (*Id.*) IW's objections regarding the time HP spent on summary judgment and any alleged block billing are hypocritical and the Court should grant HP its full fees on this topic. *Farfaras*, 433 F.3d at 569.

### H. Local Counsel Actively Participated in This Litigation and Reduced Overall Fees and Expenses

HP utilized local counsel at Leydig as part of its core litigation team to lower costs and ensure greater efficiency while defending this case in the Northern District of Illinois. Utilizing Leydig to help develop case strategy, perform oral arguments, and revise briefing to comply with Local Rules reduced the time HP's other counsel needed to spend on these same issues. It also reduced HP's fees and costs associated with having lead counsel travel to Chicago for hearings.

IW argues that Paul Korniczky's work at Leydig is duplicative because he only reviewed, analyzed, or considered the work performed by others. (Ex. 2 at 16-17.) A simple reading of the objected to time entries disproves IW's position. Paul Korniczky prepared for and argued HP's motion to dismiss IW's complaint, worked on summary judgment issues, and worked on briefing for HP's success motion for fees against IW. (Ex. 2 at 16-17.) In doing so, he consulted with co-counsel and co-defendants, which IW admits is not unreasonable or duplicative. (Ex. 2 at 2 ("it is not uncommon for law firms to assign multiple attorneys to work together on projects").) Courts in this District have endorsed a collaborative approach to litigation, including staying abreast of developments in the case. *King*, 2003 WL 22019357, at *5 ("hours spent discussing

strategy with co-counsel about [a] case are not unreasonable or excessive"); *see also Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2008 WL 341374, at *4 (N.D. Ill. Feb. 1, 2008) (time billed to "conscientious monitoring" of the progress of the overall case is not excessive or duplicative).

Further, it is not unreasonable for one attorney to take the lead on the project while multiple attorneys edit and provide other support, as HP did in this case. In *Dupuy*, the court endorsed multiple attorneys working on projects, noting "that although several attorneys devoted time to the same issue, it is generally clear that they were not duplicating work. Often, one attorney was obviously the draftsman of a court filing, and the other the primary editor." *Dupuy*, 648 F. Supp. 2d at 1020. Here, when not working on oral arguments, Paul Korniczky was often an editor of projects on which other HP attorneys took the lead. HP is entitled to recover all of these fees.

## I.     Work IW Describes as "Administrative" Was Necessary

HP worked to reduce its overall fees by utilizing non-attorney staff to help prepare motions and file motions, among other tasks. IW complains that this work was administrative, not legal in nature. Further, IW objects that monthly communications between HP's outside counsel and in-house counsel are "exorbitant." IW could not be further off base. Moreover, IW's own billing records show that it regularly engaged in the same practices. (Ex. 4.)

HP's outside counsel provided monthly reports on the progress of this case, including notifying HP of upcoming litigation events. These updates came in the form o ███████████ █████████████████████████████████████████ Unlike IW, HP is a publically-traded company that actually makes and sells products used in people's everyday lives. As a public company, HP's in-house counsel must stay apprised of the status of its litigation, including projected future developments. Communications between HP outside and inside

counsel are not administrative, but a necessary part of the legal process that allowed HP to make informed decisions on settlement and litigation strategy, as well as to provide any necessary disclosures required of a public company under state and federal law.

**J.      HP's Work from the Period the Case Was Stayed Through 2014 Was Reasonable and Necessary**

IW objects to the fees HP incurred while the case was stayed. However, HP spent a considerable amount of time from March 2012 through December 2013 on important issues in this case, including issues that resulted in favorable Court opinions. During this period, HP spent time attending Court status conferences, briefing the Court on developments in the HTC litigation, briefing its motion to reconsider the Court's original Order dismissing the case (which the Court modified after briefing), and briefing the motion to declare the case exceptional and award fees (which the Court granted). (Dkts. 142, 144-145, 148-151, 154-157, 159.) In fact, IW spent time on many of these same activities. (Ex. 4 at 23-24.) In addition, the stay in this case did not bar HP from performing any work towards resolution of this litigation. Courts in this District have granted fees in similar situations, where a party incurs fees after the court issues a stay. *Nilssen*, 2011 U.S. Dist. LEXIS 13615, at *14. Likewise, the Court should award HP fees for its activities after the Court stayed this case.

**K.      HP's Time Entries Are Descriptive and Minimally Redacted**

Although IW acknowledges that the Local Rule 54.3(d)(1) allows redaction of information that is protected by the attorney-client privilege or work product doctrine, IW still complains that hundreds of hours of work are "vaguely detailed" and overly redacted. Once again, IW objects to actions that it also performed. Numerous portions of IW's billing records are redacted or altered. In fact, IW redacted materials by either placing white blocks over the redacted information or placing black blocks over the information, which leads to a confusing

mishmash of redactions. (*See, e.g.,* Ex. 4 at 19.) In addition, IW appears to actually have

changed the time and fees in billing entries in which it performed redactions. (*See, e.g., id.*) In

contrast, HP's consistent redactions and unaltered invoices, only remove the content of

privileged communications, mostly between an attorney and client. The Court should reject

IW's hypocritical position. *Farfaras*, 433 F.3d at 569.

Moreover, HP's billing entries are not vague, but rather satisfy the requirements for

sufficient detail. Billing entries must be "detailed enough to allow the opposing party and the

court to determine that the time billed accurately reflects the time spent on the case." *Dupuy*,

648 F. Supp. 2d at 1029. The Court should also examine billing entries in the context of other

entries to determine whether they are impermissibly vague, rather than in isolation. *Berberena v.

Coler*, 753 F.2d 629, 634 (7th Cir. 1985). HP's entries adequately describe the work performed

on this case.

### L. HP's Fees Are Related to This Lawsuit

IW's final argument is that work billed to this litigation was not actually related to this

litigation. (Ex. 2 at 38-39.) Once again, IW misses the mark. HP reviewed scheduling orders in

other patent infringement litigation, including the IBT litigation involving the Niro firm, in order

to develop a reasonable and acceptable case schedule. This saved time by not starting from

scratch in addressing scheduling issues. HP's review of the Henderson deposition transcript,

discussed above, also related to this litigation because Henderson was the central figure in the

entire litigation. HP also investigated potential expert witnesses as it developed its invalidity and

non-infringement defenses in this case, unaware on which defenses it might ultimately prevail.

Finally, HP participated in discovery related to the Niro firm's knowledge of Henderson's false

declarations, which was the subject of a successful motion to compel and other pending motions

in this case. (Dkts. 164-166, 169, 181-183, 187-188.) All of these activities are explicitly related

to this litigation and the Court should allow HP to recover the associated fees.

## IV. HP IS ENTITLED TO PREJUDGMENT AND POST-JUDGMENT INTEREST

HP has expended numerous resources over nearly four years on a case that IW brought on fraudulently obtained patents. IW never should have brought this litigation. In order to make HP whole, the Court should award pre and post-judgment interest for HP's attorneys' fees.

The Court has authority to award prejudgment interest on attorneys' fees awards under 35 U.S.C. § 285. *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995); *Mathis*, 857 F.2d at 760-61. Notably, prejudgment interest is an element of complete compensation, intended to compensate a party for the loss of use of its money. *West Virginia v. United States*, 479 U.S. 305, 310 (1987); *Local Okla. Bank, N.A. v. United States*, 452 F.3d 1371, 1378 (Fed. Cir. 2006); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). Failing to award prejudgment interest when a case was not brought in good faith results in less than full compensation. *Nilssen*, 2011 U.S. Dist. LEXIS 13615, at *42-45. In *Nilssen*, the Court awarded prejudgment and post-judgment interest on an attorneys' fees award when the patent was held to be invalid for inequitable conduct. *Id.* In fact, such interest is presumptively available in this case. *See Fortino v. Quasar Co.*, 950 F.2d 389, 397 (7th Cir. 1991) ("the purpose of prejudgment interest is to make sure that an award of compensatory damages is fully compensatory and that it is a salutary purpose – as a matter of fact we have held that such interest is presumptively available in cases under federal law."); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Thus, the Court should award interest compounded monthly at the prime rate for all of HP's fees and expenses.

## V. CONCLUSION

For the reasons stated above, the Court should grant HP's full request of ▮▮▮▮▮▮▮ for fees and costs in this litigation, which includes HP's fees spent through August 28, 2014. (Ex. 6.)

Dated: August 29, 2014                    Respectfully submitted,


By:   /s/ Stephen S. Korniczky
        Stephen S. Korniczky
        Martin R. Bader
        Gray M. Buccigross
        Matthew M. Mueller
        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        12275 El Camino Real, Suite 200
        San Diego, CA  92130
        Tel:      (858) 720-8900
        Fax:      (858) 509-3691
        skorniczky@sheppardmullin.com
        mbader@sheppardmullin.com
        gbuccigross@sheppardmullin.com
        mmueller@sheppardmullin.com

        Paul J. Korniczky
        LEYDIG, VOIT & MAYER, LTD.
        Two Prudential Plaza, Suite 4900
        180 N. Stetson Avenue
        Chicago, IL  60601-6731
        Tel:      (312) 616-5600
        Fax:      (312) 616-5700
        pkorniczky@leydig.com

        Attorneys for Defendants
        **HEWLETT-PACKARD COMPANY and
        PALM, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on the following:

Raymond P. Niro
Paul K. Vickrey
David J. Mahalek
NIRO, HALLER & NIRO, LTD.
181 West Madison Street, Suite 4600
Chicago, IL  60602
**Attorneys for Plaintiff**
**INTELLECT WIRELESS, INC.**


Date:   August 29, 2014                         /s/ Stephen S. Korniczky