**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTELLECT WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | The Hon. Rebecca R. Pallmeyer |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 10 C 6763 |
| SHARP CORPORATION, SHARP | ) | |
| ELECTRONICS CORPORATION, | ) | |
| HEWLETT-PACKARD COMPANY, PALM, | ) | |
| INC., DELL INC., AND GARMIN | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS HEWLETT-PACKARD COMPANY AND PALM, INC.'S
REPLY IN SUPPORT OF FEE AND EXPENSE MOTION**</u>

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 1

II. IW INAPPROPRIATELY RAISES NEW, UNEXPLAINED, AND DUPLICATIVE
OBJECTIONS ......................................................................................................... 2

    A. IW Failed to Comply With Local Rule 54.3 ................................................ 2

    B. IW Has Not Cured Its Duplicative Objections ............................................. 3

    C. IW's Objection to HP's Costs is Vague and Unsupportable ........................ 3

III. IW'S SPECIFIC OBJECTIONS DO NOT SUPPORT ITS REQUEST TO REDUCE
THE AMOUNT OF FEES AND COSTS REQUESTED BY HP ........................... 4

    A. HP's Counsel Did Not Engage In Block Billing, But Block Billing Is
Permitted and HP's Time Entries Are Descriptive of the Tasks Performed ............... 4

    B. HP's Develop Its Invalidity Positions Was Reasonable .............................. 6

    C. IW Admits That Joint Defense Work is Compensable ................................ 7

    D. HP's Analysis of Henderson's Non-Confidential Deposition from Other
Litigation as Part of Its Defense to This Litigation Was Reasonable ........................ 7

    E. HP's Evaluation of All of Its Litigation Options Was Reasonable ............. 8

    F. HP's Early Case Assessment Was Necessary and Tailored to Inform HP of
the Strengths and Weaknesses of the Case ................................................. 8

    G. HP's Summary Judgment Briefing Was Reasonable and Successful .......... 9

    H. Local Counsel Fees Are Compensable ....................................................... 9

    I. Work IW Describes as "Administrative" Was Necessary ......................... 10

    J. HP's Work from the Period the Case Was Stayed Through 2014 Was
Reasonable and Necessary ....................................................................... 11

    K. HP's Time Entries Are Descriptive and IW Takes Them Out of Context ................. 12

    L. HP's Fees Are Related to This Lawsuit .................................................... 13

    M. HP's Hourly Rates Are Reasonable and Intellect Did Not Timely Object to
the Rates ................................................................................................. 13

IV.	CONCLUSION .................................................................................................................15

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Berberena v. Coler*
753 F.2d 629 (7th Cir. 1985) .................................................................................... 12

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*
267 F.3d 1370 (Fed. Cir. 2001) .................................................................................. 6

*Crispin v. Bd. of Educ. of the City of Chicago, Dist. 299*
No. 09-CV-3993, 2010 WL 3701328 (N.D. Ill. Sept. 10, 2010) ........................... 11

*Cuff v. Trans States Holdings, Inc.*
No. 10 C 1349, 2013 WL 140607 (N.D. Ill. Jan. 11, 2013) ................................. 4, 9

*Duran v. Town of Cicero*
No. 01 C 6858, 2012 WL 1279903 (N.D. Ill. Apr. 16, 2012) .............................. 4, 5

*Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*
264 F. Supp. 2d 753 (S.D. Ind. 2003) ................................................................... 6, 8

*Farfaras v. Citizens Bank & Trust of Chicago*
433 F.3d 558 (7th Cir. 2006) ..................................................................................... 9

*Firestine v. Parkview Health Sys., Inc.*
374 F. Supp. 2d 658 (N.D. Ind. 2005) .................................................................... 11

*Hutchison v. Amateur Elec. Supply, Inc.*
42 F.3d 1037 (7th Cir. 1994) ............................................................................... 4, 10

*Jardien v. Winston Network, Inc.*
888 F.2d 1151 (7th Cir. 1989) .................................................................................... 6

*Johnson v. GDF, Inc.*
668 F.3d 927 (7th Cir. 2012) ................................................................................... 14

*Lane v. Piper Jaffray Cos.*
No. 01-C-925, 2005 WL 1229388 (E.D. Wis. May 24, 2005) .......................... 10, 11

*Mathis v. Spears*
857 F.2d 749 (Fed. Cir. 1988) ............................................................................... 6, 8

*Mostly Memories Inc. v. For Your Ease Only, Inc.*
594 F. Supp. 2d 931 (N.D. Ill. 2009) ........................................................................ 5

*Muzikowski v. Paramount Pictures Corp.*
477 F.3d 899 (7th Cir. 2007) .................................................................................... 14

*Nilssen v. Gen. Elec. Co.*
No. 06 C 04155, 2011 WL 633414, 2011 U.S. Dist. LEXIS 13615 (N.D. Ill. Feb. 11,
2011) .................................................................................................................... 6, 12

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*
776 F.2d 646 (7th Cir. 1985) ................................................................................ 4, 10

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*
90 F.3d 1307 (7th Cir. 1996) .................................................................................... 14

*Pickett v. Sheridan Health Care Ctr.*
664 F.3d 632 (7th Cir. 2011) .................................................................................... 14

*Riggins v. Sec'y of Health & Human Servs.*
406 Fed. Appx. 479 .................................................................................................. 11

*Spegon v. Catholic Bishop of Chicago*
175 F.3d 544 (7th Cir. 1999) .................................................................................... 11

*In re Synthroid Mktg. Litig.*
264 F.3d 712 (7th Cir. 2001) ...................................................................................... 5

Other Authorities

Federal Rule of Civil Procedure 11 ............................................................................ 6, 7

Local Rule 54.3 ................................................................................... 1, 2, 12, 13, 14

## I.     INTRODUCTION

Defendants Hewlett Packard Corporation and Palm, Inc. (collectively, "HP") seek their reasonable fees for defending against Intellect Wireless, Inc.'s ("IW") frivolous lawsuit based on fraudulently obtained patents. IW now asks the Court to ignore its own conduct and instead vaguely objects to HP's billing entries such that nobody – not the Court, not HP – can determine how IW reaches its ultimate conclusion that over 71% of the ████████ in fees and costs that HP incurred are unreasonable. For example, IW objects to over ████████ in fees for alleged block billing (not including IW's new, unfounded objection to HP's hourly rates), but points the Court to only three examples. These three examples (which presumably were the best IW could come up with) do not support IW's objections. More importantly, IW then concludes that over ████ other *unidentified* hours of attorney time fall into this category. IW fails to explain to the Court or HP how it arrived at the ████ hours and fails to provide any support for its conclusion. Moreover, IW fails to inform the Court or HP how it arrived at the ████ hours despite the fact that HP specifically raised the issue regarding IW's duplicative objections in its opening brief.

IW's approach is contrary to the purpose of Local Rule ("LR") 54.3, which requires the party objecting to identify specifically for the Court the fees that are in dispute. Instead, IW vaguely objects to as many fees and costs as possible in hope of a reduced reward, leaving the Court and HP no way to determine the time entries that are still at issue. Finally, IW raises for the first time new objections to HP's fee and expense request that are not included in the parties' Joint Statement. IW's objections are inappropriate and only serve to multiply the dispute over fees, which has already suffered from IW's previous failures to comply with the express language of LR 54.3. As HP's invoices demonstrate, its fees are reasonable and directly related to defending HP against IW's frivolous lawsuit, which never should have been brought in the first place.

## II.   IW INAPPROPRIATELY RAISES NEW, UNEXPLAINED, AND DUPLICATIVE OBJECTIONS

### A.   IW Failed to Comply With Local Rule 54.3

First, IW objects that HP failed to comply with LR 54.3 by failing to initially provide detailed invoices to IW.  HP has consistently complied with LR 54.3 and provided all relevant information to IW, even when not specifically requested by IW pursuant to the Local Rule. Namely, LR 54.3 requires that "the parties shall, ***upon request***, provide the following information to each other," *e.g.*, time and work records.  HP initially provided IW with a summary of the total hours and amounts each attorney and other person billed in this litigation, including amounts for HP's expenses.  Rather than requesting any additional information, three weeks later IW provided vague objections alleging that HP had not provided IW with enough detailed information to support its fee request.  (Ex. 7.)  To alleviate IW's objections, HP treated IW's objections as a request for more information under the Local Rules.  The next business day, HP provided detailed invoices supporting all of its fees and expenses.  (Ex. 8.)  Thus, HP fully complied with LR 54.3 and provided detailed invoices once they were requested.

Second, IW failed to comply with LR 54.3 by refusing to identify all of its objections to HP's request for fees and expenses in the Joint Statement:  "the respondent shall include a similar table giving respondent's position as to the name, compensable hours, appropriate rates, and totals for each biller listed by movant."  LR 54.3(e)(2).  It is undisputed that IW never provided HP with this information.  Instead, IW only identified overlapping categories of objections without any indication of the fees for each biller that were not objectionable.  (Ex. 1.)

Finally, the parties are limited in their briefs to only issues actually raised in the Joint Statement.  LR 54.3(f) ("the motion and any supporting or opposing memoranda shall limit their argument and supporting evidentiary matter to disputed issues.")  However, IW raises issues

related to billing rates for HP's attorneys and HP's expenses in its briefing that are not in the parties' Joint Statement. (*See* Ex. 1.) The Court should reject IW's belated arguments not found in the Joint Statement and award HP its full request for fees and expenses at the billing rates that HP actually paid its attorneys.

**B.     IW Has Not Cured Its Duplicative Objections**

In attempting to explain and justify its duplicative objections, IW summarily tells the Court that it has eliminated its duplicative objections in its opposition brief. (Dkt. 207 at 2.) Yet, IW does not identify the billing entries it has eliminated from each category of objections. Nor does IW explain how it allegedly reduced the number of objectionable hours. This is a straightforward process and the only explanation is that IW has intentionally obfuscated its objections so that neither the Court nor HP can determine what entries are still at issue. Moreover, the only reference to any specific billing entries is to an example of roughly a dozen entries. (Dkt. 207 Ex. 1.) Remarkably, ***even IW's own example contains duplicative entries***. (*Id.* at 2 (Bader entry on 01/06/2014 listed twice).)

**C.     IW's Objection to HP's Costs is Vague and Unsupportable**

The Court should reject IW's unexplained objections to HP's expenses. Not only did IW fail to raise this objection in the Joint Statement, but IW has offered absolutely no explanation to support the objection. Rather, IW's total argument is:

> Similarly, based upon the parties' Joint Statement (HP's Ex. 1) and Plaintiff's objection letter to HP's fees and expenses (HP's Ex. 2), Plaintiff respectfully seeks an award of expenses to HP according to the following calculation ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

(Dkt. 207 at 15.) IW does not even bother to identify the specific expenses to which IW objects. It also fails to explain why the expenses are allegedly objectionable. Finally, the Joint Statement does not contain any objection to HP's expenses. (*See* Ex. 1.) The Court should reject this

general and conclusory objection. *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994) (party challenging fees request has a "responsibility to state objections with particularity and clarity"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985).

## III.    IW'S SPECIFIC OBJECTIONS DO NOT SUPPORT ITS REQUEST TO REDUCE THE AMOUNT OF FEES AND COSTS REQUESTED BY HP

### A.    HP's Counsel Did Not Engage In Block Billing, But Block Billing Is Permitted and HP's Time Entries Are Descriptive of the Tasks Performed

IW acknowledges that block billing is ***not*** prohibited and that HP's billing entries cannot be objected to unless they are so vague as to prevent the Court from determining whether they were billed for work on this case.  (Dkt. 207 at 4.)  In fact, the legal authority IW relies upon allowed block billing and rejected objections to multiple activities in a single entry.  *Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *4-5 (N.D. Ill. Apr. 16, 2012) (reasoning that time spent was reasonable, even if the court could not determine how much time was spent on each task).  Further, IW engaged in similar billing practices, such that it would be hypocritical to allow IW to object to HP's billing.  *Cuff v. Trans States Holdings, Inc.*, 10 C 1349, 2013 WL 140607, *2 (N.D. Ill. Jan. 11, 2013), *aff'd*, 13-1241, 2014 WL 4653010 (7th Cir. Sept. 19, 2014).

Moreover, the legal authority IW cites supports HP's position that the Court should not reduce fees for alleged block billing.  For example, *Duran* stated that a court should reduce fees only when it is "impossible" to determine what was done, whether it was reasonable, and whether the time spent was reasonable.  *Duran*, 2012 WL 1279903, at *4-5.  Further, in *Duran*, the court granted the requesting party the full amount of requested fees for numerous entries that were allegedly block billed, including 6.4 hours for "Telephone call to Lopez, Joseph R.; telephone call to De Leon, John R.; telephone call from De Leon, John R.; meet with clients" and 8 hours for "Review documents and notes and begin drafting Complaint; teleconference calls w/

Lopez and De Leon; complete draft of correspondence." *Duran*, 2012 WL 1279903, at *4-5. HP has provided far greater detail in its allegedly block billed entries and the Court should not reduce HP's fees for block billing.

IW also argues that HP's billing requirements are irrelevant to determining whether entries are block billed. HP has detailed billing guidelines that set forth how HP's counsel are required to bill for time spent working on this case. Rather than block billing, HP's counsel categorized billing entries using task codes, such as "Post-Trial Motions and Submissions" for post-trial attorneys' fees briefing. Each of HP's billing entries falls into one of these categories, which HP's invoices clearly indicate. (*See* Ex. 3.) HP accepted these bills, which the Seventh Circuit endorses as evidence of sufficient detail. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Mostly Memories Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 936 (N.D. Ill. 2009).

Finally, rather than specifically identifying all of the allegedly objectionable "block billed" entries, IW offers the Court only three examples that IW identifies as the most "egregious." (Dkt. 207 at 4.) In example #1, Bader describes in detail his work on an "early case assessment" memorandum with specific references to each of the issues within that memorandum that he addressed. (Bader Decl. at ¶ 1.) The billing entry describes work on a single document. (*Id.*) In example #2, Bader describes in nearly 100 words (not including redactions) his early work on the case. This billing entry is incredibly detailed and demonstrably related to the case. In example #3, S. Korniczky describes work on three different documents in this case: a protective order, a discovery order, and an ESI stipulation. There is nothing vague or confusing about any of these descriptions and IW does not explain why the work performed in any of these entries would not be compensable. Finally, as is the case for most hours objected to

in IW's opposition, IW fails to provide *any* information on its methodology for reducing the objected to hours from ███████████ and which entries are in dispute. The Court should reject IW's objections because they are not specific, HP paid the invoices, and IW engaged in the same billing practices.

**B.      HP's Development of Its Invalidity Positions Was Reasonable**

HP is not limited to the attorneys' fees it incurred only for preparing its successful defenses, but is entitled to all of the fees and costs that it incurred defending this case. *Nilssen v. Gen. Elec. Co.*, No. 06 C 04155, 2011 WL 633414, 2011 U.S. Dist. LEXIS 13615, at *38 (N.D. Ill. Feb. 11, 2011) (quoting *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001)). IW attacks HP's fees by citing to general legal principles that have nothing to do with HP's work developing its defenses. Here, unlike *Jardien*, as HP's invoices demonstrate, all of the time HP seeks reimbursement for was actually billed to HP. Further, neither *Jardien* nor *Eli Lilly* involved parsing attorneys' fees requests for defenses that the court did and did not consider because the court earlier decided the case on other grounds. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160-61 (7th Cir. 1989); *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 264 F. Supp. 2d 753, 770-71 (S.D. Ind. 2003). The Federal Circuit allows attorneys' fees for unsuccessful defenses and those not decided. *Mathis v. Spears*, 857 F.2d 749, 756 (Fed. Cir. 1988) ("the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").

IW argues that HP should not have developed its invalidity defense, because the Court never established a schedule for serving invalidity contentions. (Dkt. 207 at 6.) Not only is this contrary to *Mathis*, but it is illogical. HP pled invalidity in its Answer and Counterclaims served in June 2011. (Dkt. 96 at 5, 41-42.) In order to do so, HP had to have a Rule 11 basis for those claims, which necessitated reviewing and examining prior art and comparing that to the claims of

the patents-in-suit. Moreover, HP could not know which of its defenses the Court would ultimately find persuasive—or which defenses necessarily would sustain an appellate challenge. However, IW would have the Court apply hindsight to HP's management of the case, rather than evaluating the necessity of work at the time it was done. The Court should not apply such an approach in this case and should award HP its fees for work on all its defenses.

### C. IW Admits That Joint Defense Work is Compensable

Perhaps now conceding that HP's work on joint motions actually reduced fees, IW recasts its objection to supposedly eliminate work done on joint projects. (Dkt. 207 at 7.) As with its other objections, IW fails to identify which time entries are in dispute and only provides three "examples" of the allegedly most egregious entries. (*Id.*) In examples #1 and 3 provided by IW, S. Korniczky describes conversations with co-defendants regarding motions to dismiss and his review and follow up comments on Dell's May 2014 motion to compel documents. This work directly benefited all Defendants by eliminating claims from the case and obtaining materials implicating Niro's knowledge of and role in IW's misconduct. (*See* Dkt. 207 Ex. 1.) Likewise, in example #2, Buccigross analyzed and provided input on a draft non-infringement motion, which ***Dell and HP jointly filed***. (*See* Dkt. 123.) Once again, even IW's best examples show that HP's work was reasonable, directed to this case, and should be compensable.

### D. HP's Analysis of Henderson's Non-Confidential Deposition from Other Litigation as Part of Its Defense to This Litigation Was Reasonable

Henderson is the inventor of the patents-in-suit, the CEO of IW, and the person who lied to the patent office in order to obtain the patents-in-suit. Although not from this case, Henderson's prior depositions are not entirely confidential and HP's outside counsel obtained a copy of the deposition. (Ex. 9.) As is evidenced by the billing entries themselves, HP's attorneys analyzed the deposition for HP and discussed the deposition with co-defendants in

conjunction with motions to dismiss. (Ex. 2 at 7.) These activities were reasonable for HP's development of its defenses, including inequitable conduct.

### E. HP's Evaluation of All of Its Litigation Options Was Reasonable

HP's investigation of the misjoinder issues in this litigation was reasonable. As explained in HP's opening briefing, HP analyzed whether IW improperly joined the parties to this case in a single litigation (*i.e.*, misjoinder) and determined that a motion to sever was not in its best interests. Therefore, it did not file the motion. There was nothing unreasonable about HP's investigation. Moreover, *Eli Lilly*, upon which IW relies, is not on point. In *Eli Lilly*, Lilly spent over 300 hours preparing a summary judgment motion "for which the essential foundation was not yet available." *Eli Lilly*, 264 F. Supp. 2d at 770-71. The court denied fees because, at the time the work was performed, it was not reasonable to spend over 300 hours preparing a summary judgment motion without the essential foundation existing. *Id.* However, it did not deny the fees simply because Lilly never filed the motion. *Id.* Here, HP spent only approximately █ hours examining the misjoinder issue before concluding not to file the motion. There is no evidence that this was an unreasonable amount of time to research the issue and work with HP to determine whether to file a motion. Moreover, the Federal Circuit allows attorneys' fees for unsuccessful defenses and those not decided. *Mathis*, 857 F.2d at 756. Thus, the Court should not deny HP its fees for analyzing and strategizing regarding the misjoinder issue.

### F. HP's Early Case Assessment Was Necessary and Tailored to Inform HP of the Strengths and Weaknesses of the Case

HP's "early case assessment" was a proper and necessary investigation into IW's allegations against HP. The early case assessment is a tool for HP's outside and in-house counsel to assess the strengths and weaknesses of IW's case and HP's possible defenses. HP's billing entries describe work on the "early case assessment" memorandum with specific

references to each of the areas within that document on which attorneys worked.  (Bader Decl. at ¶ 1.)  For the first time, IW argues in its opposition that HP's entries are duplicative of work on its motion to dismiss, answer, and counterclaims.  (Dkt. 207 at 8-9.)  However, even this belated and improperly new objection does not identify which entries are allegedly duplicative of the early case assessment entries.  IW's failure to provide information on its methodology for reducing the objected to hours from ███████ exacerbates the issue and calls into questions which billing entries are even still in dispute.  Regardless, HP was entitled to conduct a complete and comprehensive assessment of the strengths and weaknesses of the case from the outset, including preparing a privileged assessment of the case to guide settlement and other strategies.

### G.     HP's Summary Judgment Briefing Was Reasonable and Successful

HP and IW spent nearly the same amount of time on summary judgment briefing (Ex. 4 at 16-22), yet IW maintains that HP's time spent on summary judgment is excessive.  IW's objections are conclusory and hypocritical.  IW argues that HP's summary judgment motion was duplicative of HP's motion to dismiss, so it was excessive to spend significant time on the summary judgment motion.  (Dkt. 207 at 9.)  However, IW spent nearly the same amount of time opposing HP's motion, despite the fact that IW had also opposed HP's prior motion to dismiss.  Thus, IW's position ignores its own actions, which show HP's time was reasonable.  *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006); *Cuff*, 2013 WL 140607, *2-3.  Further, IW spent approximately the same amount of time on summary judgment as HP despite the fact that HP had two briefs to prepare and IW only had to prepare a single opposition brief.  As IW's own billing records demonstrate, the time HP spent on summary judgment issues was reasonable and the Court should grant HP its full fees work this work.

### H.     Local Counsel Fees Are Compensable

HP utilized local counsel P. Korniczky at Leydig as part of its core litigation team and, as with all of HP's fees requests, HP actually paid Leydig's invoices in question. "The presence of local counsel can be of assistance to out-of-town counsel. For example, local counsel can acquaint out-of-town counsel with the known (but not formally announced) practices of various judges and court personnel." *Lane v. Piper Jaffray Cos.*, No. 01-C-925, 2005 WL 1229388, at *8 (E.D. Wis. May 24, 2005). In *Lane*, which IW cited, the court allowed fees for local counsel and only disallowed fees for local counsel unnecessarily attending trial without participating. *Id.* Here, IW does not dispute P. Korniczky's trial participation, but argues that P. Korniczky's work on motions was duplicative of unidentified other billing entries. Not only should such general objections be dismissed (*see Hutchison*, 42 F.3d at 1048 (party challenging fees request has a "responsibility to state objections with particularity and clarity"); *Ohio-Sealy*, 776 F.2d at 664), a simple reading of the objected to time entries disproves IW's position. P. Korniczky prepared for and argued HP's motion to dismiss IW's complaint, worked on summary judgment issues, and worked on briefing for HP's successful motion for fees against IW. (Ex. 2 at 16-17.) All of his work enhanced HP's motions rather than duplicated efforts, including when he took the lead on oral argument. As such, P. Korniczky played a vital role in this litigation and did not duplicate the efforts of others, meaning the Court should award HP its reasonable fees for his work.

## I. Work IW Describes as "Administrative" Was Necessary

HP is not seeking fees for administrative work, but for work that was necessary to the case, including communicating to the client about the status of the litigation and upcoming events. Each reconciliation report, status update, or monthly estimate about which IW complains is a communication between HP's outside and inside counsel about the current progress of the case and upcoming events. The fact that these communications were delivered through a

-10-

specific software program other than email or by phone does not make them administrative.

Finally, this is not a case, like those IW cited, in which HP knew it would automatically receive its attorneys' fees if it prevailed and had no reason to scrutinize invoices. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (FLSA case requiring fees to a prevailing plaintiff); *Firestine v. Parkview Health Sys., Inc.*, 374 F. Supp. 2d 658, 661-62 (N.D. Ind. 2005) (Title VII Civil Rights case requiring same); *Lane*, 2005 WL 1229388, at *1 (42 U.S.C. § 2000e case allowing fees to a prevailing plaintiff). Nor is it a case in which the fees requested greatly exceeds the damages request in the case. *See Spegon*, 175 F.3d at 548 (noting attorneys' fees seven times the amount of damages). Rather, HP incurred and paid these fees in defense of IW's frivolous action with no expectation that HP would ever be repaid. HP's work on this case was not administrative and the Court should award HP its full fees.

**J.      HP's Work from the Period the Case Was Stayed Through 2014 Was Reasonable and Necessary**

HP performed reasonable and necessary work during the stay, including attending Court status conferences, briefing the Court on developments in the HTC litigation, briefing its motion to reconsider the Court's original Order dismissing the case (which the Court modified after briefing), and briefing the motion to declare the case exceptional and award fees (which the Court granted). (Dkts. 142, 144-145, 148-151, 154-157, 159.)  IW spent time on many of these same activities. (Ex. 4 at 23-24.)  IW now argues that it was unnecessary and unreasonable to do ***any*** work during the period of the stay without any explanation for why the work itself was inappropriate. According to IW's theory, HP should not have even prepared for and attended the Court Ordered status conference during the stay. Notably, IW's legal authority does not support the proposition that parties should not do work during a stay. *See Riggins v. Sec'y of Health & Human Servs.*, 406 Fed. Appx. 479, 481 (not discussing a stay at all); *Crispin v. Bd. of Educ. of*

*the City of Chicago, Dist. 299*, No. 09-CV-3993, 2010 WL 3701328, *6 (N.D. Ill. Sept. 10, 2010) (same). Moreover, courts in this District have granted fees in similar situations, where a party incurs fees after the court issues a stay. *Nilssen v. Gen. Elec. Co*, No. 06 C 04155, 2011 WL 633414, 2011 U.S. Dist. LEXIS 13615, at *14 (N.D. Ill. Feb. 11, 2011). Thus, because HP's work was reasonable and related to important activities in this case, the Court should award HP all of its fees for work done during the stay.

### K.     HP's Time Entries Are Descriptive and IW Takes Them Out of Context

HP's billing entries adequately describe the activities HP's attorneys performed throughout the case, especially when placed in the context of other billing entries. *See Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985). As previously described, HP's attorneys used task codes to describe each billing entry. (*See* Section III.A.) These descriptive categories appear throughout HP's invoices and add context to the individual billing entries. Using one of IW's objections as an example, the Bader 1/25/2011 entry is categorized under the "Settlement" category in HP's billing. While this entry was redacted to remove an attorney-client communication, it is clear from the billing code that the discussion was related generally to settlement. Yet, IW takes this entry entirely out of context by failing to analyze it in the context of the ongoing settlement discussions between the parties. (*Compare* Ex. 2 at 33 *with* Dkt. 202, Ex. 3, Invoice 222843442 at p. 8.) Similarly, IW takes the redacted time entry that it uses as example #1 out of the context of the "Joint Defense" billing code under HP's billing requirements. (*Compare* Dkt. 207 Ex. 1 at 3 *with* Dkt. 202, Ex. 3, Invoice 222898593 at p. 12.) LR 54.3(d)(1) specifically allows redaction of information that the attorney-client privilege or work product doctrine protects. These privileges protect communications between attorneys and clients, experts, or members of a joint defense group. Such redactions do not provide a valid basis for objection.

Remarkably, in a case where the need for candor to the Court could not be more apparent, IW attempts to mislead the Court by only providing partial billing entries in making its objections, leaving out the remaining description of activities. For example, in IW's example #3, IW lists S. Korniczky's December 24, 2010 billing entry as:



(Dkt. 207 Ex. 1 at 3.) In reality, the full billing entry in HP's exhibit states:



(Dkt. 202, Ex. 3, Invoice 222841836 at p. 5 (emphasis added).) Finally, as is true throughout IW's opposition, IW fails to provide information on its methodology for reducing the objected to hours from ███ and which entries are in dispute. IW's outright deception, combined with IW taking HP's entries out of context and failure to explain what entries are still in dispute should lead the Court to deny IW's objections.

**L.     HP's Fees Are Related to This Lawsuit**

HP's fees in its invoices are all related to this litigation, as HP explained in its opening briefing. At the time of its investigation into scheduling orders, HP could not have known that a scheduling order would not be necessary for the case. Nor could HP have known that the litigation would never get to the point of needing expert witnesses. If, as IW implies, it was so apparent that HP would succeed on its motion to dismiss or motion for summary judgment, then IW and its attorneys should have dismissed the litigation and/or not opposed the motion to dismiss. Finally, as with every other objection, IW fails to provide information on its methodology for reducing the objected to hours from ███ and which entries are in dispute.

**M.     HP's Hourly Rates Are Reasonable and IW Did Not Timely Object to the Rates**

IW's untimely objection to HP's billing rates is an affront to LR 54.3 and an ambush on HP's reasonable request for attorneys' fees. LR 54.3(f) requires a fee motion to be limited to the disputed issues raised in the Joint Statement:

> FEE MOTION. The movant shall attach the joint statement to the fee motion. Unless otherwise allowed by the court, the motion and any supporting or opposing memoranda shall limit their argument and supporting evidentiary matter to disputed issues.

The Joint Statement does not contain any objection to the hourly rates for HP's attorneys. (*See* Ex. 1.) Neither does the Joint Statement contain information on IW's proposed rates for each of HP's attorneys, as LR 54.3(e)(2) requires:

> … the respondent shall include a similar table giving respondent's position as to the name, compensable hours, appropriate rates, and totals for each biller listed by movant.

As such, the Court should reject IW's belated objection.

If the Court considers the hourly rate objection, "[t]he best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). This rate is "presumptively appropriate to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (internal quotation marks omitted). This rule is "well established." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007). Once the fee applicant establishes that the requested rate is reasonable, "the burden shifts to the other party to offer evidence that sets forth a good reason why a lower rate is essential." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). Here, the rates HP seeks are the actual billing rates for HP's attorneys, making them presumptively the market rate. In addition, the hourly rates for HP's attorneys are in line with the rates other defendants paid for attorneys in this case. (*See* Dkt. 194 at Ex. 5 (showing Dell's rates).)

Moreover, IW's proposed rates are contrary to the rates IW previously proposed in this case. IW proposed vastly different rates to Dell and Sharp as part of their Joint Statements:



(Dkt. 194-1 at 13-14; Dkt. 198-1 at 3-4.) IW's inability to be consistent in its allegation regarding reasonable rates demonstrates that it has not met its burden of disproving the reasonable market rate that HP seeks for its attorneys. Further, the AIPLA survey IW relies upon to support its average rates is not limited to patent litigators or even litigation attorneys, but collects information from a variety of different types of practitioners, including corporate IP attorneys, patent prosecution attorneys, trademark attorneys, and copyright attorneys. (Ex. 10 at I-29, I-42 (showing that IP litigation makes up just 21% of the time spent for the partners and associates surveyed); I-31, I-44 (showing that 23 of 35 partners and 17 of 22 associates surveyed in Chicago perform patent prosecution work).) IW does not even attempt to draw a correlation between the general IP rates it cites and the rates for patent litigation attorneys. Thus, IW fails to demonstrate that the ***market rate for patent litigation*** in lower than the rates of HP's attorneys.

Given IW's belated assertion as to the hourly rate for HP's attorneys, HP's demonstration that its hourly rate is what was actually billed in the market, and IW's failure to offer a consistent, supported position on hourly rates for patent litigation, the Court should accept HP's hourly rates.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant HP's full request of ▮▮▮▮▮ for fees and costs in this litigation, plus interest.

Dated: October 9, 2014

Respectfully submitted,

By:  /s/ Martin R. Bader
　　Stephen S. Korniczky
　　Martin R. Bader
　　Gray M. Buccigross
　　Matthew M. Mueller
　　SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
　　12275 El Camino Real, Suite 200
　　San Diego, CA  92130
　　Tel:　　(858) 720-8900
　　Fax:　　(858) 509-3691
　　skorniczky@sheppardmullin.com
　　mbader@sheppardmullin.com
　　gbuccigross@sheppardmullin.com
　　mmueller@sheppardmullin.com

　　Paul J. Korniczky
　　LEYDIG, VOIT & MAYER, LTD.
　　Two Prudential Plaza, Suite 4900
　　180 N. Stetson Avenue
　　Chicago, IL  60601-6731
　　Tel:　　(312) 616-5600
　　Fax:　　(312) 616-5700
　　pkorniczky@leydig.com

　　Attorneys for Defendants
　　**HEWLETT-PACKARD COMPANY and
　　PALM, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on the following:

Raymond P. Niro
Paul K. Vickrey
David J. Mahalek
NIRO, HALLER & NIRO, LTD.
181 West Madison Street, Suite 4600
Chicago, IL  60602
**Attorneys for Plaintiff**
**INTELLECT WIRELESS, INC.**


Date:   October 9, 2014                    /s/ Martin R. Bader